**Bennie Carl RENFRO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–97–00085–CR.

Court of Appeals of Texas,
Texarkana.

Argued Nov. 25, 1997.

Decided Dec. 9, 1997.

Discretionary Review Refused
March 4, 1998.

Michael Jimerson, Henderson, for appellant.

Bill Saban, Dist. Atty., Henderson, for Appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

The appellant, Bennie Carl Renfro, appeals from a conviction for the offense of burglary of a habitation, a second degree felony. Renfro was found guilty by a jury and sentenced to fifteen years' imprisonment.

In his sole point of error, Renfro argues that the trial court erroneously overruled his motion to suppress confession on the following grounds:

(1) the confession was not voluntary;

(2) the confession was the fruit of an illegal detention and arrest;

(3) the appellant was not taken before a magistrate before making his written confession; and

(4) the oral confession does not comply with Article 38.22 of the Texas Code of Criminal Procedure.

### Background

On May 30, 1996, Mark Hays discovered that his parents' home in rural Rusk County had been burglarized. He called the sheriff's office and reported the burglary. Officers Cruse and Ellis responded and inspected the house and surrounding area. About forty paces south-southwest of the home, the deputies found small items which had been stolen

from the home. Every few feet there were additional items on the ground that appeared to be from the Hayses' home. Officers Cruse and Ellis followed this trail of items to a group of houses approximately a mile and a half away from the Hayses' home. The group of houses appeared to share a common outside area, and several people were outside in this area when the deputies arrived. The deputies spoke with the people who were outside, and then went to all four homes to look around and ask questions of the inhabitants about the burglary. Renfro was living in one of the homes. After getting his consent, the officers looked around Renfro's home, but the search yielded no evidence.

Back outside, Officer Cruse noticed a woman wearing a necklace which matched the description of an item stolen in the robbery. When questioned about the necklace, the woman told the officer that Renfro had given her the necklace as payment for driving him to Laneville early that morning. The officers then arrested Renfro without a warrant. Officer Ellis advised Renfro of his *Miranda*[1] rights and placed him in the police car. Renfro then orally confessed that he had committed the burglary.

Shortly thereafter, Investigator Wiggins of the sheriff's office arrived on the scene. He asked Renfro if he had been read his rights, and Renfro responded in the affirmative. Wiggins then asked Renfro if he had committed the burglary. Renfro again verbally confessed to the burglary. He was then transported to the sheriff's office. There, in the presence of Wiggins and Officer Cruse, Renfro initialed and signed a written form acknowledging that he had been advised of his *Miranda* rights as enumerated on the form. Wiggins and Renfro then prepared a written confession, which Renfro also signed. It is undisputed that, from the time of his arrest to the time of his written statement, Renfro was not taken before a magistrate.

Renfro claims that he was never advised of his *Miranda* rights and that he would not have confessed had he been so advised. He also asserts that Wiggins told him, if he cooperated, he would not receive jail time, but would be placed in a drug rehabilitation program. Wiggins acknowledges that he told Renfro "it was possible that he could get some assistance in his cocaine addiction," but denies the statement was intended as a promise. Additionally, Renfro asserts that Wiggins threatened additional prosecutions if he did not cooperate. Wiggins claims that he simply stated that he would advise the district attorney of Renfro's assistance with the case and that the more cooperative Renfro was, the more likely the matter could be handled as one offense.

Renfro filed a motion to suppress confession with the trial court on January 23, 1997. An evidentiary hearing on the motion was held on February 3, 1997. After hearing testimony presented by both parties, the trial court overruled the motion to suppress.

## Analysis

At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. The judge may believe or disbelieve all or any part of a witness's testimony. His findings should not be disturbed absent a clear abuse of discretion. *Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App.1990).

■ The State argues that Renfro did not properly preserve error at the trial court level because he did not object to the introduction of the confessions during trial on the same basis used in his motion to suppress. When a pretrial motion to suppress evidence is overruled, the accused need not subsequently object to the admission of the same evidence at trial to preserve error as long as the pretrial motion to suppress is supported by evidence and the error presented on appeal is the same as was presented to the trial court. TEX.R.APP. P. 52(b); *Writt v. State*, 541 S.W.2d 424, 426 (Tex.Crim.App.1976); *Riojas v. State*, 530 S.W.2d 298, 301 (Tex. Crim.App.1975).

Since the trial court conducted an evidentiary hearing and Renfro is reurging the same issues on appeal as were contained in his motion to suppress, the point of error is properly preserved.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

### 1. Voluntariness of the Oral and Written Confessions

Renfro claims that he confessed in response to Investigator Wiggins' promises to him that he could avoid jail time and get help with his drug addiction if he cooperated with the police. Renfro also asserts that Wiggins threatened him with additional prosecutions if he did not cooperate.

For a confession to be rendered involuntary by promises from law enforcement, the accused must show that the promise was (1) positive; (2) of some benefit to the defendant; (3) made or sanctioned by someone in authority; and (4) of such an influential nature that a defendant would speak untruthfully in response thereto. *Sossamon v. State*, 816 S.W.2d 340, 345 (Tex. Crim.App.1991). Renfro asserts that, during the taking of his confession, Wiggins told Renfro: (1) he would try to get Renfro help for his drug problem; and (2) Renfro had nothing to worry about. Renfro interpreted Wiggins' statements to mean that he would receive treatment for his drug problem and would not receive jail time.

These statements do not indicate the "if-then" relationship required to establish a promise. These statements do not rise to the level of an "unequivocal conditional agreement" whereby in exchange for a confession Wiggins would see to it that Renfro received drug treatment. *See Chambers v. State*, 866 S.W.2d 9, 20 (Tex.Crim.App.1993). Further, Wiggins testified that he specifically told Renfro that he did not have the authority to make any promises. The trial court did not abuse its discretion in determining that Wiggins made no promises to Renfro.

Renfro also asserts that Wiggins threatened additional prosecutions if he did not tell Wiggins what he knew. Wiggins denies making such a threat. Wiggins testified that he told Renfro he would tell the district attorney's office about the level of cooperation received, which could help alter the number of charges brought against him. Once again, this exchange does not demonstrate that Wiggins unequivocally promised anything to Renfro in return for a confession. The trial court found that Wiggins made no threat and also found that he informed Renfro that he had no authority to make such promises.

The trial court did not abuse its discretion in finding the confessions were voluntary.

### 2. Confessions as Fruit of an Illegal Detention and Arrest

Renfro next asserts that the confessions, both oral and written, were products of an illegal detention and arrest. It is undisputed that Renfro was arrested without a warrant. A police officer should always obtain an arrest warrant when possible. *Hardison v. State*, 597 S.W.2d 355, 357 (Tex. Crim.App. [Panel Op.] 1980). If an officer arrests a suspect without a warrant, the arrest must fall within an exception listed in Chapter 14 of the Texas Code of Criminal Procedure. These exceptions are strictly construed. *Honeycutt v. State*, 499 S.W.2d 662, 665 (Tex.Crim.App.1973). When relying on a statutory exception, the State bears the burden of demonstrating that the arrest properly complied with the statute. *Woods v. State*, 806 S.W.2d 351, 353 (Tex.App.-Texarkana 1991, pet. ref'd).

The State relies on Article 14.04 in order to justify Renfro's warrantless arrest. Article 14.04 provides:

Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

TEX.CODE CRIM. PROC. ANN. art. 14.04 (Vernon 1977). This requirement was explained in *Honeycutt*:

In accordance with the strict construction given exceptions allowing warrantless arrests, [the Court of Criminal Appeals] has always required a clear showing that the person arrested was about to escape. As is often said when considering an arrest without warrant, inarticulate hunches and

suspicions are not enough to justify the arrest.

499 S.W.2d at 665.

■ In order for an arrest to be justified under the Article 14.04 exception, there must be some evidence amounting to satisfactory proof, either related by a credible person to an officer or observed by the officer, indicating that the defendant was about to escape so that there was no time to procure a warrant. *Dejarnette v. State,* 732 S.W.2d 346, 351 (Tex.Crim.App.1987).

The record established that Renfro was arrested by Officers Cruse and Ellis immediately after Officer Cruse discovered the stolen necklace. Although the record does contain sufficient proof to justify the officers' belief that a felony had been committed by Renfro, the record is devoid of any evidence that he was about to escape or that the officers lacked time to procure a warrant.

In support of this exception, the State argues that "[a]ppellant knew that Ellis and Cruse had evidence that he had committed the burglary, a serious offense. Ellis and Cruse, knowing Appellant knew this, were required to arrest him to prevent his escape." The State points to no evidence in the record that Renfro was about to escape. Although the arresting officers need not prove beyond a reasonable doubt that the appellant was likely to escape, the statute does require that the officers show that they were acting upon satisfactory proof. Since the record fails to show that the officers were acting on *any* proof that Renfro was about to escape, we conclude that they acted outside the scope of the statute when they arrested Renfro without a warrant.

■ Such conclusion does not end our inquiry. We now must determine if the illegal arrest tainted the confessions. Confessions given after an illegal arrest are not admissible unless the taint of the illegal arrest has been sufficiently attenuated so as to render the confessions usable.

Renfro actually made three confessions. The first, an oral confession where Renfro admitted to committing the burglary, was made to Officer Ellis immediately after his arrest. The second, also an oral confession, was made to Investigator Wiggins shortly after Wiggins arrived at the scene. The final confession, a written confession, was made to Investigator Wiggins after arriving at the sheriff's office.

■ When evaluating evidence to see if the taint of the illegal arrest has been attenuated, the following four factors must be considered: 1) whether *Miranda* warnings were given; 2) the temporal proximity of the arrest to the confession; 3) the presence of intervening circumstances; and 4) the purpose and flagrancy of the official misconduct. *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 427 (1975); *Johnson v. State,* 871 S.W.2d 744, 751 (Tex.Crim.App.1994); *Bell v. State,* 724 S.W.2d 780, 788 (Tex.Crim.App.1986). All four factors must be considered, but no one factor should be dispositive. *Johnson,* 871 S.W.2d at 751.

The *Brown* taint analysis has been troublesome to Texas courts. The case at bar can be analogized to two Texas Court of Criminal Appeals cases which, although similar in fact to one another, reach different conclusions when applying the *Brown* taint analysis: *Bell,* 724 S.W.2d 780; and *Self v. State,* 709 S.W.2d 662 (Tex.Crim.App.1986). In *Bell,* a murder suspect was arrested without a warrant. The suspect was given his *Miranda* warnings two times, once before he gave an oral confession and again before he gave a written confession. The first confession was given between an hour and a half to three hours after the arrest. There were no significant intervening circumstances. Although the police arrested Bell without a warrant, the court found that they did have probable cause to arrest. The *Bell* court held that the police misconduct was between a technical and a flagrant violation and found that the taint of the arrest was not sufficiently attenuated from the arrest so that the confession was rendered inadmissible.

In *Self,* a murder suspect was arrested without a warrant. The suspect was warned of his *Miranda* rights three times prior to giving a confession. Approximately two hours elapsed between the arrest and the confession, and there were no significant in-

tervening circumstances. Although the police arrested Self without a warrant, the court found they did have probable cause to arrest. The *Self* court held that the police misconduct was not flagrant or purposeful and found that the taint of the arrest was sufficiently attenuated from the confession so as to render the confession admissible.

Although the two cases were substantially similar to one another, the taint analyses and the outcomes diverged at one point, the flagrancy of the police misconduct. The facts surrounding the police misconduct are virtually identical, yet the court reaches a different conclusion in each case. The Texas Court of Criminal Appeals tried to rectify this inconsistency when it held that different results could be reached under a taint analysis depending on whether the illegality stemmed from both constitutional and statutory violations or statutory violations alone. *Brick v. State,* 738 S.W.2d 676 (Tex.Crim. App.1987). "[I]f the illegality ... rests alone upon the violation of the statute [Article 14 of the Code of Criminal Procedure], this may well influence the court of appeals' assessment of the purposefulness and flagrancy of the police misconduct, and, all other factors weighing equally, could ultimately tip the balance." *Id.* at 681. Although the court did not state which way the balance in such a situation would be tipped, it is logical to assume that the balance would shift toward the State. It appears the court is saying that a constitutional violation is of a much more serious nature and would likely constitute flagrant misconduct, while a statutory violation alone, depending on the misconduct involved, is less likely to rise to the level of flagrant misconduct, even though it is misconduct nonetheless.

 As to Renfro, the first factor, whether *Miranda* warnings were given, clearly favors the State. The record shows that *Miranda* warnings were given to Renfro three times, once before his first oral confession and twice before his written confession.

Although Renfro denies being given these warnings in any of these three instances, the trial court found that he had been properly advised of his rights. Renfro was sufficiently advised of his *Miranda* rights so as to attenuate the taint. However, *Miranda* warnings alone are not sufficient to remove the taint. *Taylor v. Alabama,* 457 U.S. 687, 690, 102 S.Ct. 2664, 2666–2667, 73 L.Ed.2d 314, 319 (1982).

 The second factor to consider is the temporal proximity of the illegal arrest to the confessions. This factor is typically not considered a strong factor. *Bell,* 724 S.W.2d at 788. Texas courts have reached many different conclusions as to how much time between the illegal arrest and the confession is necessary to attenuate the taint.[2] Approximately one hour to an hour and a half elapsed between Renfro's arrest and his written statement to Wiggins. Renfro's oral confessions occurred at various times within that time period. This factor clearly weighs in favor of the appellant.

As to the third factor, virtually no event intervened between Renfro's arrest and his first, second, or third confessions. Renfro confessed shortly after his arrest, sat in a police car for a short time, and then confessed again. He was then transported to the sheriff's office, booked into jail, and placed in a holding facility. Wiggins removed him from the holding facility, brought him to the office for questioning, and then took his written confession. All of this took place within approximately ninety minutes of the arrest. Because of the lack of intervening circumstances to attenuate the taint, this factor also weighs in favor of the appellant.

The final factor requires an analysis of the purpose and flagrancy of official misconduct. The United States Supreme Court emphasized the importance of this factor: "[t]he temporal proximity of the arrest and the confession, the presence of intervening cir-

---

2. Footnote four in *Bell v. State,* 724 S.W.2d 780, 788 n. 4 (Tex.Crim.App.1986), reviewed some of the facts in Texas cases relevant to this factor. Texas cases resolved in favor of the defendant range from spans of one and a half and two hours to two or three days, while cases re-

solved in favor of the State range from three hours and five hours to twenty-four hours, twenty-nine hours, and two days. Making such a comparison on the basis of time span alone demonstrates its paucity of meaning as a determinative "factor." (Citations omitted.)

cumstances ... and, particularly, the purpose and flagrancy of the official misconduct are all relevant." *Brown v. Illinois,* 422 U.S. at 603–604, 95 S.Ct. at 2261–62, 45 L.Ed.2d at 427. Unlike *Brown,* where the Supreme Court found that the arresting officers had calculated the warrantless arrest to cause fright, surprise, or confusion, the arresting officers in this case did not appear to harbor such motives. *Id.,* 422 U.S. at 605, 95 S.Ct. at 2262–63, 45 L.Ed.2d at 428. Also, the presence of probable cause to arrest the appellant seems to mitigate to some degree the flagrancy of the official misconduct, absent other egregious violations of the appellant's rights during the illegal arrest. *Brick,* 738 S.W.2d at 681; *Self,* 709 S.W.2d at 668. Because the trail of items ended in the common area near the appellant's home and a bystander told the officers that she had received property from Renfro that the officers identified as being part of the property missing from the Hayses' home, the officers had probable cause to arrest Renfro. Although the conduct of the officers in arresting Renfro when they did was illegal, it does not rise to the level of conduct censured by the Supreme Court in *Brown.* This conclusion is further bolstered by *Self* and *Brick.*

Even though Renfro's arrest was illegal, the trial court did not abuse its discretion in refusing to exclude the confessions on that basis.

### 3. Failure to Take Appellant Before a Magistrate

 Renfro also argues that his written confession was obtained illegally because he was not taken before a magistrate before giving the written confession. He asserts that he would not have given the confession had he been taken before a magistrate prior to his statement. Renfro relies on Article 14.06 of the Texas Code of Criminal Procedure, which requires that "the person making the arrest shall take the person arrested or have him taken without unnecessary delay before the magistrate...." TEX.CODE CRIM. PROC. ANN. art. 14.06(a) (Vernon Supp.1998). The magistrate shall immediately perform the duties described in Article 15.17 of the Code of Criminal Procedure. Article 15.17 requires that the magistrate inform the accused in plain language of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during questioning, of his right to terminate the interview at any time, of his right to request the appointment of counsel, and of his right to an examining trial. The magistrate shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him. TEX.CODE CRIM. PROC. ANN. art. 15.17 (Vernon Supp.1998).

 It is well settled that the failure to take an arrestee before a magistrate in a timely manner will not invalidate a confession unless there is proof of a causal connection between the delay and the confession. *Cantu v. State,* 842 S.W.2d 667, 680 (Tex.Crim. App.1992). Additionally, when a person is properly warned of his rights by the person taking his confession, the failure to take the accused before a magistrate before taking the confession does not invalidate the confession. *Self,* 709 S.W.2d at 667.

It is undisputed by the State that the appellant was not taken before a magistrate before he made a written confession. The record also reflects that Investigator Wiggins presented Renfro with a written form describing his rights, which was initialed and signed by Renfro at 3:50 p.m., before he gave his written confession, which was signed at 4:30 p.m. Although Renfro denies that he was ever advised of his rights, or that he signed the written form describing his rights, Wiggins testified that Renfro did sign the form and, furthermore, that Officer Cruse was also present when Renfro signed the form. The trial court found that Renfro did sign the form and found that he was aware of his rights at the time he made the written confession. The trial court also found that Renfro failed to show any causal connection between the failure to take him before a magistrate and the giving of the confession. The trial court did not abuse its discretion by refusing to suppress the confession due to the failure to take Renfro before a magistrate.

### 4. Oral Confession's Compliance with Article 38.22

Renfro's last contention is that his oral confession did not comply with Article 38.22 of the Texas Code of Criminal Procedure and therefore the trial court abused its discretion in allowing it by overruling the motion to suppress confession. During the trial, Investigator Wiggins was questioned about the development of the written confession and asked to describe the events which led up to the written confession. Wiggins described his conversation with the appellant at the scene and repeated the oral confession given to him at that time. Renfro objected to the admission of the oral confession in open court before the jury, but the judge overruled the objection.

Oral confessions are generally inadmissible. The question of the admissibility of an oral confession under Article 38.22 is a mixture of law and fact. Once it is determined that the oral statement was produced during custodial interrogation, the question arises as to whether the statement is otherwise admissible under an exception to the general rule of inadmissibility. That answer depends on the factual determination of whether the oral statement meets all the requirements of Section 3(a) or whether the oral statement "contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused" as required under Section 3(c). *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990).

Pursuant to TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon Supp.1998), oral confessions made during custodial interrogation must meet the following requirements to be admissible:

(1) an electronic recording is made of the statement;

(2) the accused is given the warnings required in Article 15.17, and these warnings are on the recording and are given prior to the confession;

(3) the recording device was capable of making an accurate recording, the operator competent, and the recording was accurate and unaltered;

(4) all voices on the recording are identified;

(5) the defendant's attorney receives an accurate copy of the recording twenty days before the proceeding.

There is no indication that Renfro's oral confession, about which Investigator Wiggins testified, comported with any of the requirements of this statute.

Further, the record fails to show that this confession "contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused," making it admissible pursuant to TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(c) (Vernon Supp.1998). The oral confession complained of here as being improperly admitted to the jury is simply a statement by Renfro that he did commit the burglary. No other pertinent facts were communicated to Wiggins at that time.

The oral confession introduced at trial was not admissible, and the trial court abused its discretion in allowing it. But again, this conclusion does not end the inquiry.

The Court must now determine if the action of the trial court in overruling Renfro's objection to the admission of this oral confession resulted in harmful error. An error is harmful unless this Court finds, beyond a reasonable doubt, that the error made no contribution to the conviction or the punishment. TEX.R.APP. P. 81(b)(2). The Court should consider the following six factors when conducting a harm analysis:

1. The source of the error;

2. The nature of the error;

3. Whether or to what extent it was emphasized by the State;

4. Its probable implications;

5. How much weight a juror would probably place upon the error; and

6. Whether declaring the error harmless would encourage the State to repeat it with impunity.

*Garcia v. State*, 919 S.W.2d 370, 380 (Tex. Crim.App.1994); Harris v. State, 790 S.W.2d 568, 587 (Tex.Crim.App.1989).

The State brought up the oral confession during the direct examination of Investigator

Wiggins while he was describing the series of events which led to the written confession. The oral confession to which he testified consisted of nothing more than an acknowledgment by Renfro that he had committed the burglary. The oral confession was mentioned only once by Wiggins and was never referred to again. A few moments later, the written confession was admitted into evidence and read to the jury. Renfro did not say anything in his oral confession that was not included in his written confession. The written confession, although given in greater detail, was cumulative of and entirely consistent with the oral confession. Therefore, it was unlikely the oral confession greatly affected the jury after the written confession was entered into evidence. Although admitting the oral confession was error, it was harmless error.

The appellant's point of error is overruled, and the judgment of the trial court is affirmed.