In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00175-CR
______________________________


TERRANCE LAMONT LIPSCOMB, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 30927-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION
            When Deputy Tracy Freeman of the Gregg County Sheriff's Office saw Terrance Lamont
Lipscomb's car traveling along Interstate 20, Freeman believed Lipscomb was traveling in excess
of the seventy mile-per-hour posted speed limit. Freeman verified his suspicions using radar, which
indicated Lipscomb was traveling at seventy-five miles per hour. Freeman then initiated a traffic
stop based on Lipscomb's speed. Events following the traffic stop


 resulted in Lipscomb being
arrested for several offenses, including the one at issue in this case: unlawful possession of a firearm
by a felon.


 See Tex. Pen. Code Ann. § 46.04 (Vernon Supp. 2004–2005). Lipscomb moved to
suppress the State's evidence as the product of an illegal traffic stop. The trial court denied
Lipscomb's motion after conducting a hearing, and Lipscomb subsequently pled guilty to the various
charges without the benefit of a plea agreement. Lipscomb was sentenced in this case to ten years'
confinement.


 He now appeals the trial court's denial of his motion to suppress evidence. For the
reasons stated, we affirm the trial court's judgment.
            An appellate court reviews a trial court's ruling on a motion to suppress for abuse of
discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); Maysonet v. State, 91
S.W.3d 365, 369 (Tex. App.—Texarkana 2002, pet. ref'd). A trial court abuses its discretion when
it acts unreasonably or arbitrarily, if it acts outside the zone of reasonable disagreement, or if its
decision is made without reference to guiding rules and principles. Montgomery v. State, 810
S.W.2d 372, 380 (Tex. Crim. App. 1990). As the finder of historical fact, the trial court is free to
believe or disbelieve the testimony or evidence from any witness, even if that witness' testimony or 
a piece of evidence is otherwise not controverted by the opposing side. State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000). An appellate court reviews the trial court's application of law to
the lower court's findings of historical fact under a de novo standard. Id. at 856. If the trial court
does not issue written findings of fact and conclusions of law regarding the ruling on a motion to
suppress, the reviewing court should assume the trial court made implicit findings to support its
ruling, so long as those implied findings are supported by the record. Id.; Maysonet, 91 S.W.3d at
369. If the trial court's decision can be upheld under any theory applicable to the case, the reviewing
court must affirm that judgment. Ross, 32 S.W.3d at 855–56.
(1)       The Initial Traffic Stop Was Valid
            Lipscomb first contends Freeman was without probable cause to initiate a traffic stop. 
Lipscomb argues Freeman failed to testify that he properly used his radar unit in this case (in
accordance with widely accepted police techniques), and that Freeman's failure to so testify violates
the requirements set forth in this Court's opinion in Maysonet regarding the admissibility of radar
evidence. Lipscomb next asserts that because there were other cars nearby, of which Freeman also
checked the speed, it is possible Freeman's radar measured only the speed of these other cars and not
the speed of Lipscomb's car. Because there was sufficient evidence to provide Freeman probable
cause to believe Lipscomb was speeding, we reject these arguments.
            Freeman's testimony, if believed by the trial court—and we assume it was because the trial
court ruled against Lipscomb—would support a finding that Lipscomb was committing a crime by
speeding. Seventy miles per hour is the maximum lawful speed during daytime hours on Texas
interstate roadways. Tex. Transp. Code Ann. § 545.352(b) (Vernon Supp. 2004–2005). Traveling
in excess of that speed on a Texas interstate is unlawful. Tex. Transp. Code Ann. § 545.352(a)
(Vernon Supp. 2004–2005). Freeman, a certified peace officer and a fourteen-year veteran of the
sheriff's department, testified he first observed Lipscomb traveling at a speed Freeman believed to
be in excess of the posted speed limit. Freeman also testified that, based on his experience, he "can
get pretty close to telling that a vehicle is traveling faster than the normal flow of traffic." Freeman
subsequently verified his suspicions using "calibrated" radar.


 Based on his visual observations and
the confirmation he received from his radar unit, Freeman had specific information that would
logically lead him to conclude Lipscomb was unlawfully speeding. We believe Freeman's testimony
about using calibrated radar, testimony which the trial court could have properly interpreted to mean
the radar was operating correctly, when combined with the officer's earlier testimony that he had
visually estimated Lipscomb's speed to be excessive, was sufficient to satisfy the requirements we
set forth in Maysonet. And, to the extent that there may have been conflicting evidence about which
car Freeman's radar measured, the trial court resolved such factual conflicts against Lipscomb. 
Because, here, that conflict resolution is supported by the record, we will not disturb it.
            Accordingly, we cannot say the trial court erred by holding Freeman was authorized to stop
Lipscomb for speeding. The initial traffic stop was, therefore, lawful.
(2)       The Traffic Stop Was of Reasonable Length
            In his second and third points of error, Lipscomb contends Freeman unnecessarily prolonged
the traffic stop and searched Lipscomb's vehicle without valid consent. Officers are permitted to ask
for identification, a valid driver's license, and proof of insurance during a traffic stop. Davis v. State,
947 S.W.2d 240, 245 n.6 (Tex. Crim. App. 1997). Officers may also check for outstanding warrants. 
Id. The officer must, however, use "the least intrusive means reasonably available to verify or dispel
his suspicion in a short period of time." Id. Under Davis, Freeman's detention of Lipscomb "was
required to be temporary and could last no longer than was necessary" to satisfy or dispel the officer's
original suspicion of speeding and to conclude the stop. Id.
            In this case, a videotape of the traffic stop was entered into evidence. A review of that
videotape shows Freeman initiated the stop and made first contact with Lipscomb at 7:53 a.m. 
Freeman informed Lipscomb of the purpose of the stop, asked for Lipscomb's license and proof of
insurance, and briefly inquired into Lipscomb's driving and criminal histories. This initial
conversation lasted barely one minute. Freeman then returned to his patrol car, contacted a
dispatcher, and requested a criminal and out-of-state license history on Lipscomb. Eight to nine
minutes later, the dispatcher contacted Freeman with those histories, including verification that
Lipscomb had spent time in the penitentiary for narcotics trafficking. Freeman then returned to the
rear of Lipscomb's car and asked Lipscomb to step to the rear of that vehicle. Freeman then appears
to tell Lipscomb he will receive only a warning citation, and Freeman then asks for consent to search,
which Lipscomb provides. 
            Consent to search is "one of the well-established exceptions to the constitutional
requirements of both a warrant and probable cause." Carmouche v. State, 10 S.W.3d 323, 331 (Tex.
Crim. App. 2000) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); State v. Ibarra, 953
S.W.2d 242, 243 (Tex. Crim. App. 1997)). The videotape clearly shows Lipscomb gave willing
consent to the officer's request to search the vehicle. Lipscomb's contention on appeal to the contrary
is disingenuous and not supported by the evidence. Less than ten seconds passed between the time
Freeman informed Lipscomb (at the rear of the car) that the latter would receive a warning citation
and the moment when Lipscomb consented to a search of the vehicle. Thus, we cannot conclude,
given the sequence of discrete facts of this case, that the lapse of ten seconds amounted to an
unreasonable extension of the duration of the traffic stop.


 We therefore overrule Lipscomb's second
and third points of error.
(3)       The Confession Was Admissible
            In his final point of error, Lipscomb contends his written custodial confession should have
been inadmissible because it was taken before he was taken to a magistrate to receive the warnings
required by Article 15.17 of the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc.
Ann. art. 15.17 (Vernon 2005). "It is well settled that the failure to take an arrestee before a
magistrate in a timely manner will not invalidate a confession unless there is proof of a causal
connection between the delay and the confession." Renfro v. State, 958 S.W.2d 880, 887 (Tex.
App.—Texarkana 1997, pet. ref'd) (citing Cantu v. State, 842 S.W.2d 667, 680 (Tex. Crim. App.
1992)). "Additionally, when a person is properly warned of his rights by the person taking his
confession, the failure to take the accused before a magistrate before taking the confession does not
invalidate the confession." Id. (citing Self v. State, 709 S.W.2d 662, 667 (Tex. Crim. App. 1986)).
            Lipscomb has made no effort to point to any evidence in the record showing a causal
connection between the delay in being brought before a magistrate and his confession, nor has any
been shown by our review of the record. Moreover, the first paragraph of Lipscomb's confession
reads,
I, TERRENCE [sic] LAMONTE LIPSCOMB, do freely and voluntarily make the
following statement to Investigator MIKE CLAXTON and Ranger RONNY
GRIFFITH after having been warned by him on the 18th day of August 2003 at 9:30
AM at the Gregg County Sheriff's Office CID, that I have the right to remain silent
and not make any statement at all and that any statement I make may be used against
me at my trial; any statement I make may be used as evidence against me in court;
I have the right to have a lawyer present to advise me prior to and during any
questioning; [i]f I am unable to employ a lawyer, and I have the right to have a
lawyer appointed to advise me prior to and during questioning; and I have the right
to terminate the interview at any time. Knowing and intelligently understanding my
rights, I freely and voluntarily wish to waive the above rights and do hereby make
this statement . . . . 
 
The statement itself shows Lipscomb was warned of his rights before the statement was taken;
Article 15.17 therefore does not bar the statement's admissibility. We overrule Lipscomb's final
point of error.
            For the reasons stated, we affirm the trial court's judgment.


                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          July 12, 2005
Date Decided:             August 31, 2005

Do Not Publish




of ineffectiveness. Blott v. State,
588 S.W.2d 588, 592 (Tex. Crim. App. 1979). That another attorney, including appellant's
counsel on appeal, might have pursued a different course of action does not necessarily
indicate ineffective assistance. Harner v. State, 997 S.W.2d 695, 704 (Tex.
App.‒Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded
in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. 
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).
          Further, we have been warned that direct appeal is often not an appropriate or
adequate venue in which to raise such a claim. The Texas Court of Criminal Appeals has
correctly pointed out that, when ineffective assistance is raised on direct appeal, appellate
counsel and the court must proceed on a trial record not developed for the object of
litigating or preserving the claim and thus often incomplete or inadequate for this purpose. 
Freeman v. State, No. 2156-01, 2003 Tex. Crim. App. LEXIS 711, at *2-3 (Tex. Crim. App.
Nov. 5, 2003). Although some claims may be disposed of on direct appeal where "trial
counsel's ineffectiveness is so apparent from the record," Massaro v. United States, ___
U.S. ___, 123 S.Ct. 1690, 1696 (2003); Freeman, 2003 Tex. Crim. App. LEXIS 711, at *3,
it appears the Texas Court of Criminal Appeals has concluded such situations are quite
rare. 
          In this case, Divine argues counsel was ineffective because he did not make an
objection to the State's failure to send outcry notices when he actually received the outcry
statements October 4, 2001, and by failing to articulate any substantial reasons at trial
regarding harm suffered from lack of notice. The purpose of the notice is to–provide
notice. Counsel had actual notice, if not the formal document. Although counsel was
entitled to such a document, there is no reason to consider him ineffective for failing to
demand the document when he had the statements in hand. Further, in the absence of
any record showing that substantial reasons reflecting harm actually exist, we cannot
consider that counsel was ineffective for failing to place any such reasons before the court. 
In the absence of a record supporting the allegation counsel was ineffective, we cannot so
conclude. The contention of error is overruled.
Summary and Conclusion
          In summary, we hold the State's failure to give timely notice of outcry testimony was
harmless error. We further hold it was not error to admit the testimony of two outcry
witnesses, even though the victim specifically denied in her outcry to the first witness that
the conduct she described to the second witness ever occurred. Finally, we hold that
Divine was not denied effective assistance of counsel.
 

          For these reasons, we affirm the judgment.

                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      November 17, 2003
Date Decided:         December 4, 2003

Publish