Opinion issued March 29, 2012.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00151-CR

———————————

James Edward Probst, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 183rd District Court 

Harris County, Texas



Trial Court Case No. 1163334



 

MEMORANDUM OPINION

 

          A jury found appellant guilty of capital murder,
and, because the State did not seek the death penalty, the trial court assessed
punishment at confinement for life.  See Tex.
Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2011); Tex. Code Crim. Proc. Ann. art.  37.071
§1 (Vernon 2006).  In two issues on
appeal, appellant contends that (1) his recorded statement was involuntary, and
(2) the evidence is legally insufficient to support his conviction.  We affirm.

BACKGROUND

          On April 14, 2008, Jesus Garcia and
Cesar Alvarado Cruz drove together after work to cash their paychecks at a
check-cashing store in a nearby shopping center.  After getting their money, Cruz got in the
driver’s seat and Garcia got in the front passenger seat.  As Cruz was putting his key in the ignition
and closing the door, a man came up to the car, grabbed the top of the car
door, pointed a gun over the door at Cruz, and demanded his money.  Garcia testified that the gunman had the
lower part of his face covered with a red cloth, but Garcia was able to see
tattooed lettering on his cheeks.   
Garcia also testified that Cruz did not move toward the victim in any
way or make any move to grab the gun. 
Instead, the gunman started shooting at Cruz.  Immediately, Garcia threw himself out of the
car onto the ground, got up and started running.  When Garcia stood up, the gunman shot him in
the back.

          Through an anonymous tip, police
officers developed appellant, his mother, Debbie Probst, and his girlfriend,
Elizabeth “Libby” Smith, as suspects. 
All three were eventually arrested and charged with capital murder.

          After appellant was arrested, he was
interrogated by Sergeant M. Ynosencio and gave a written statement.   Ynosencio read appellant his rights, which
he stated he understood and waived.   Ynosencio did not threaten or coerce appellant
into speaking with her, and appellant was given drinks and bathroom breaks as
needed.

          Initially, appellant denied any involvement
with the shooting or even being at the scene of the crime.   Ynosencio then used an interrogation
technique she referred to as giving the suspect “an out.”  Specifically, she told appellant that there
were witnesses who saw the victims “come after him” and struggle for the gun,
even though, in fact, no such witnesses existed.   Ynosencio testified that appellant “took the
out” she offered and stated that “the guy got out [of the car] and they
struggled and the guy shot himself.” 
Appellant said that he was attacked by both Cruz and Garcia as he
attempted to get their money.

          Ynosencio also told appellant that
Smith was “putting all the blame” on him in an effort to get appellant to
provide more details about the offense. 
At a hearing on appellant’s motion to suppress his statement, the
following exchange took place:

[Prosecutor]: Now, during the course of this second statement, does the
Defendant ever ask you for anything?

 

[Ynosencio]: I think towards the middle of the conversation when I had
told him that his—the female that he was with was putting all the blame on him,
he wanted to get together because he wanted the whole truth to come out.

 

[Prosecutor]:  Whenever he said
that he wanted to get together, what did you do?

 

[Ynosencio]:  I told him I would
try to make it happen.

 

[Prosecutor] Did you ever promise him anything in exchange for his
testimony?

 

[Ynosencio]: No.

 

[Prosecutor]: Did you ever tell him I will arrange this only if you tell
me what’s going on?

 

[Ynosencio]: No.

 

[Prosecutor] At any time did Mr. Probst say I will not continue to speak
with you unless this is arranged?

 

[Ynosencio]: No.

 

[Prosecutor]: And based on the general context of Mr. Probst’s question
to you, what was your feeling that his request meant?

 

[Ynosencio]: I know he—to me, I thought he wanted the people—the other
people that were involved in this to be there so that he could show us
that  that was—-what they were saying,
blaming him.  He wanted them to talk
about their part, also, he wanted it all to come out in the open.

 

[Prosecutor]:  Okay. Did you feel
like it was more to confront them since you had put Libby’s name out on the
table?

 

[Ynosencio]: That’s exactly what I thought it was.

 

[Prosecutor] Did you at any point unequivocally offer him a benefit in
exchange for any arrangements or anything that you could possibly have done for
him?

 

[Ynosencio]: No.

 

At trial, Ynosencio further testified on the issue as follows:

 

[Prosecutor]: Whenever he’s asking you about setting up the meeting, what
is your understanding of what he’s wanting to do?

 

[Ynosencio]:  He wanted to confront
them about what—he was like, “I wasn’t there by myself.  They knew what was going on.  The truth needs to be told.  I’m going to tell the truth on them, too,”
you know.  So, I think it was more he
wanted to confront them about—he was pretty much mad because they were—you
know, they told on him. So, he wanted to show them that I’m going to tell the
truth on you, too.

 

[Prosecutor] If he’s going down, everybody’s going down?

 

[Ynosencio]: Exactly.

 

[Prosecutor]:  Did you ever feel
that by him asking to set up the meeting and you said you would try that he was
implying that he would not talk to you unless the meeting occurred?

 

[Ynosencio]:  No, because he never
said that.

 

[Prosecutor]:  Okay. And did he
ever at any point indicate that he was going to stop talking, not talk if that
didn’t happen?

 

[Ynosencio]: No.

 

[Prosecutor]: In fact, he does continue to talk?

 

[Ynosencio]: Right, he does.

 

          Appellant’s recorded statement was
subsequently admitted at trial.

          Elizabeth Smith, who was also charged
with capital murder, testified at trial in accordance with a plea agreement
that reduced her charge to aggravated robbery and capped her punishment at 25
years.  Smith testified that she,
appellant, and appellant’s mother, Debbie, agreed to “hit a lick,” or rob
someone.  They drove to a check cashing
store and waited until two men came out. 
Appellant got out of the car and walked toward the two men.  Smith did not see the shooting or hear any
gunshots because her radio was turned up, but appellant soon returned to the
car and said, “Drive. Go. I shot him.”  Appellant
never mentioned anything to Smith about Cruz grabbing the gun.

          Cruz died from a bullet entering his
left side, puncturing arteries in his lung, and exiting his right side.  Garcia was shot in the back, but
survived.  When Garcia returned to the
car after running away from the gunman, he found Cruz slumped over in the driver’s
seat of the car dead. Forensic evidence showed that Cruz’s wounds were
consistent with a person who was seated with his arm outstretched toward the
car door and who was shot by a person standing over him. Three spent .22
caliber casings were recovered outside the car, one spent .22 caliber casing
was recovered from inside the car, and one .22 caliber bullet was recovered
from inside the car.  

          After trial, the jury was charged on
both capital murder and the lesser-included offense of felony murder.  The jury found appellant guilty of capital
murder, and the trial court assessed punishment at confinement for life.  This appeal followed.

MOTION TO SUPPRESS

          In his first issue on appeal,
appellant contends the trial court erred by denying his motion to suppress his
recorded statement.  Specifically,
appellant argued that his statement was involuntary because Officer Ynosencio
falsely promised “to arrange a meeting with [his co-conspirator] Smith.”

Standard of Review

The appropriate standard
for reviewing a trial court’s ruling on a motion to suppress evidence is
bifurcated, giving almost total deference to a trial court’s determination of
historical facts and reviewing de novo
the court’s application of the law. Maxwell v. State, 73 S.W.3d 278, 281
(Tex. Crim. App. 2002). We “should afford the same amount of deference to [a]
trial court’s rulings on ‘application of law to fact questions,’ also known as
‘mixed questions of law and fact,’ if the resolution of those ultimate questions
turns on an evaluation of credibility and demeanor.” Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We conduct a de novo review when the resolution of mixed questions of law and
fact do not turn on an evaluation of credibility and demeanor. See id. 

In determining whether a trial court’s
decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. See, e.g., Hardesty v. State,
667 S.W.2d 130, 133 n.6 (Tex. Crim. App. 1984). However, this general rule is
inapplicable when, as here, the suppression issue has been consensually
re-litigated by the parties during trial on the merits. See Gutierrez v. State, 221 S.W.3d
680, 687 (Tex. Crim. App. 2007).

Applicable Law

“A statement of an accused may be used in evidence against
him if it appears that the same was freely and voluntarily made without
compulsion or persuasion. . . .” Tex. Code
Crim. Proc. Ann. art. 38.21 (Vernon 2005). “To decide this case the
court of appeals must examine the totality of the circumstances surrounding the
acquisition of the statement to determine whether it was given voluntarily.” Creager
v. State, 952 S.W.2d 852, 856–57 (Tex. Crim. App. 1997).

“[F]or a promise to
render a confession invalid under [a]rticle 38.21, the promise must be
positive, made or sanctioned by someone in authority, and of such an
influential nature that it would cause a defendant to speak untruthfully.” Martinez
v. State, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004); see Sossamon v.
State, 816 S.W.2d 340, 345 (Tex. Crim. App. 1991), abrogated on other
grounds by Graham v. State, 994 S.W.2d 651, 656 (Tex. Crim. App. 1999)
(explaining that “an appellate court must look to whether the circumstances of
the promises made the defendant ‘inclined to admit a crime he had not
committed’”) (quoting Fisher v. State, 379 S.W.2d 900, 902 (Tex. Crim. App.
1964)).

Analysis

Appellant challenges the trial court’s finding that
Detective Ynosencio’s statement that she would—“call the county and set up [a
meeting with Smith]”—constituted a promise that tainted appellant’s subsequent
confession to the charged offense.
The State responds first, that the statement was not an improper promise and
second, that even if Detective Ynosencio’s statement about setting up a meeting
with Smith was a promise, it neither induced appellant to confess nor depended
upon his confession.

Even assuming that Detective Ynosencio’s statement was a
promise, we agree with the State that there is no evidence that the promise
induced appellant to confess or depended upon his confession. The court of
criminal appeals has held that an “‘if-then’
relationship [is] required to establish [such] a promise.” Chambers v. State, 866 S.W.2d 9, 20–21
(Tex. Crim. App. 1993) (quoting Freeman v. State, 723 S.W.2d 727, 731
(Tex. Crim. App. 1986)). “[T]here must be some indication that the police
“induce[d] appellant to confess by implicitly or explicitly suggesting a ‘deal,
bargain, agreement, exchange, or contingency.’” Id. (quoting Freeman,
723 S.W.2d at 731). In other words, it is a promise made in exchange for a
confession that is prohibited, not some free-standing promise untied to the
decision to confess. See Renfro v. State, 958 S.W.2d 880, 884 (Tex.
App.—Texarkana 1997, pet. ref’d) (finding no indication that promise of drug
treatment was given in exchange for a confession).

The evidence in this
case does not show an “if-then” relationship. There is no evidence that Officer
Ynosencio induced appellant to confess by implicitly or explicitly suggesting a
“deal, bargain, agreement, exchange, or contingency.” See Chambers, 866
S.W.2d at 20–21 (quoting Freeman, 723 S.W.2d at 731). The evidence
simply does not support a conclusion that Ynosencio’s free-standing promise
rose to the level of an “unequivocal conditional agreement.” See Renfro,
958 S.W.2d at 884 (quoting Chambers, 866 S.W.2d at 20). Ynosencio’s
statement was not so positive that it tainted appellant’s confession. See
Chambers, 866 S.W.2d at 20–21; Renfro, 958 S.W.2d at 884. This
specific statement lacked the persuasive impact needed to show that it would
probably induce appellant to make an untruthful statement. Compare Creager,
952 S.W.2d at 856 (holding officer’s promise that he would try to obtain
charitable help for defendant’s wife and mother was not sufficient inducement
to confess to heinous crime); Jacobs, 787 S.W.2d at 400 (concluding that
 promise to defendant that he would be
allowed to see girlfriend was not sufficient inducement that it would likely
cause him to confess); Smith v. State, 779 S.W.2d 417, 427–28 (Tex.
Crim. App. 1989) (finding that when defendant wanted opportunity to take
polygraph test to prove innocence, and the police promised that he would be examined
by polygraph, the court stated, “we fail to perceive in what way ‘a promise’ of
a polygraph, without more, would operate to induce an accused falsely to
inculpate himself”); Salazar v. State, 687 S.W.2d 502, 503–04 (Tex.
App.—Dallas 1985, pet. ref’d) (holding that promise of leniency toward other
members of theft ring was unlikely to influence defendant to untruthfully
confess to burglary) with Pitts v. State, 614 S.W.2d 142, 142–44 (Tex.
Crim. App. 1981) (holding that defendant’s confession should be suppressed
when, among other things, police promised appellant that if he helped clear “up
any wrecking yard burglaries that he was involved in” and helped recover “all
the property possible” then they would not file charges against him as habitual
criminal); Tovar v. State, 709 S.W.2d 25, 28–29 (Tex. App.—Corpus
Christi 1986, no pet.) (concluding that defendant’s confession should be
suppressed after police told him that if “he took the rap . . . [then his
pregnant wife] wouldn’t be filed on”).

Given the totality of the circumstances
surrounding the acquisition of appellant’s statement, see Creager, 952
S.W.2d at 856–57, we conclude that the trial court’s finding that that Ynosencio
did not “make any promises to the defendant in order to get him to waive his
rights and give any statements” was not outside the zone of reasonable
disagreement. See State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App.
2006). Therefore, we conclude that the trial court did not abuse its discretion
in denying appellant’s motion to suppress.

We overrule point of error one.

SUFFICIENCY OF THE
EVIDENCE

In his second point of error, appellant argues the evidence
was insufficient to sustain his conviction for capital murder because the State did
not prove intent. Specifically, appellant contends he should have been
convicted of felony murder because
the State failed to show that appellant intended to cause Cruz’s death.
Appellant’s theory of the case was that the gun went off accidentally when Cruz
grabbed for it.

Standard
of Review

We review a challenge to the legal sufficiency of the evidence under the standard enunciated in Jackson
v. Virginia, 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). See
Ervin v. State, 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010,
pet. ref’d) (citing Brooks v. State, 323 S.W.3d 893, 894–913 (Tex. Crim.
App. 2010)). Under the Jackson standard, evidence is insufficient to support a conviction
if, considering all the record evidence in the light most favorable to the
verdict, no rational factfinder could have found that each essential element of
the charged offense was proven beyond a reasonable doubt. See Jackson, 443 U.S. at 317, 317–19, 99 S. Ct. at 2788–89; Laster
v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Evidence is
insufficient under this standard in four circumstances: (1) the record contains
no evidence probative of an element of the offense; (2) the record contains a
mere “modicum” of evidence probative of an element of the offense; (3) the
evidence conclusively establishes a reasonable doubt; and (4) the acts alleged
do not constitute the criminal offense charged. See Jackson, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at
2786, 2789 & n.11; Laster, 275 S.W.3d at 518; Williams v. State,
235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The Jackson
standard gives full play to the responsibility of the factfinder to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. See Jackson, 443 U.S. at
318–19, 99 S. Ct. at 2788–89; Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007). An appellate court presumes the factfinder resolved any
conflicts in the evidence in favor of the verdict and defers to that
resolution, provided that the resolution is rational. See Jackson, 443
U.S. at 326, 99 S. Ct. at 2793. If an appellate court finds the evidence
insufficient under this standard, it must reverse the judgment and enter an
order of acquittal. See Tibbs v. Florida, 457 U.S. 31, 41, 102 S. Ct.
2211, 2218 (1982).

Applicable
Law

A
person commits the offense of capital murder if he intentionally commits murder
while in the course of committing a robbery. Tex.
Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2011).   Felony murder is a lesser-included offense of
capital murder.  Threadgill v. State, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004); Fuentes
v. State, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999). The element
distinguishing capital murder from felony murder is the intent to kill. Threadgill, 146 S.W.3d at 665; Fuentes,
991 S.W.2d at 272. Felony murder is an unintentional murder committed in the
course of committing a felony, whereas capital murder includes an intentional
murder committed in the course of robbery. Threadgill,
146 S.W.3d at 665; Fuentes, 991 S.W.2d at 272.

Intent is most often proven through the circumstantial
evidence surrounding the crime. Hernandez v. State, 819 S.W.2d 806, 810
(Tex. Crim. App. 1991), overruled on other grounds, Fuller v. State, 829
S.W.2d 191 (Tex. Crim. App. 1992); Dominguez v. State, 125 S.W.3d 755,
761 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d). A jury may infer intent
from any facts that tend to prove its existence, such as the acts, words, and
conduct of the defendant. Hernandez, 819 S.W.2d at 810; Beltran v.
State, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980); Dominguez, 125
S.W.3d at 761. Additionally, intent to kill may be inferred from the use of a deadly weapon, unless it would
not be reasonable to infer that death or serious bodily injury could result
from the use of the weapon. Jones v. State, 944 S.W.2d 642, 647 (Tex.
Crim. App. 1996); Dominguez, 125 S.W.3d at 762. When a deadly weapon is
fired at close range, and death results, the law presumes an intent to kill. See
Sholars v. State, 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009,
pet. ref’d) (citing Childs v. State, 21 S.W.3d 631, 635 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref’d)).

Analysis

          Here, appellant fired a deadly weapon at Cruz from close range.  Thus, the law presumes an intent to
kill.  Id.  An intent to kill could
also be inferred from evidence showing that appellant fired the gun five or six
times.  See Medina v. State,
7 S.W.3d 633, 637 (Tex. Crim. App. 1999) (finding that evidence of multiple wounds and gunshots evinced a specific intent to kill), Mouton v. State, 923 S.W.2d 219, 223 (Tex. App.—Houston
[14th Dist.] 1996, no writ) (same). Forensic evidence indicates that appellant
fired his gun at the complainant multiple times.

There was no evidence, other than appellant’s own statement,
that he fired the gun as he struggled with Cruz over the weapon.  In fact, the surviving victim, Garcia,
testified that Cruz did not
move toward the victim in any way or make any move to grab the gun.  Smith testified that appellant never said
anything to her about a struggle for the gun; he just said, “Drive. Go. I shot
him.”  The evidence shows that Cruz was
shot as he sat in the driver’s seat of the car, and Garcia was shot in the back
when he bailed out of the car after the shooting started.  A bullet and bullet casing were found inside
the car.

          The
jury also heard appellant’s inconsistent stories about the shooting.  Initially, he denied any involvement, but,
when Officer Ynosencio gave him an “out” suggesting that the victims may have
started the altercation, appellant changed his story and claimed for the first
time that Cruz and Garcia had jumped him and the gun had gone off
accidentally.  

          Considering all the record evidence in the light most
favorable to the verdict, a rational factfinder could have found that the
element of intent was proved beyond a reasonable doubt. See Jackson, 443
U.S. at 317, 318–19, 99 S. Ct. at 2788–89.

          We overrule point of error two.

CONCLUSION

          We affirm the trial court’s judgment.

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel consists of Chief Justice Radack and Justices
Higley and Brown.

Do not publish. 
 Tex. R. App. P. 47.2(b).