ACCEPTED
06-15-00023-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/4/2015 1:53:04 PM
DEBBIE AUTREY
CLERK

**ORAL ARGUMENT WAIVED**

CAUSE NO. 06-15-00023-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/4/2015 1:53:04 PM
DEBBIE AUTREY
Clerk

_____

JESSICA BOYETT, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE 6TH DISTRICT COURT;
LAMAR COUNTY, TEXAS; TRIAL COURT NO. 25505;
HONORABLE WILL BIARD, JUDGE

_____

# APPELLEE'S (STATE'S) BRIEF

_____

Gary D. Young
Lamar County and District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

**ATTORNEYS FOR THE STATE OF TEXAS**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), the list of parties and counsel is not required to supplement or correct the appellant's list.

# TABLE OF CONTENTS

**PAGE NO:**

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . .        i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        ii

INDEX OF AUTHORITIES   . . . . . . . . . . . . . . . . . . . . . . . . . .        iv

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . .        viii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . .        ix

ISSUE PRESENTED IN REPLY . . . . . . . . . . . . . . . . . . . . . . .        x

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . .        2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . .        11

ARGUMENT AND AUTHORITIES

      **ISSUE PRESENTED IN REPLY NO. 1:   THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE TRAFFIC STOP WAS SUFFICIENTLY SUPPORTED BY REASONABLE SUSPICION, AND WAS JUSTIFIED.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        12

**ISSUE PRESENTED IN REPLY NO. 2: THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE JESSICA BOYETT'S ARREST WAS SUPPORTED BY PROBABLE CAUSE; THE APPELLANT'S CONFESSION WAS VOLUNTARY; AND THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING THE RECORDED STATEMENT/CONFESSION.** . . . . . . .    20

**ISSUE PRESENTED IN REPLY NO. 3: THE EVIDENCE WAS SUFFICIENT TO SUBSTANTIATE THE APPELLANT'S, JESSICA BOYETT'S, GUILT OF CRIMINAL CONSPIRACY UNDER ARTICLE 1.15 OF THE TEXAS CODE OF CRIMINAL PROCEDURE.** .    33

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    36

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . .    37

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . .    38

# INDEX OF AUTHORITIES

**CASES:**                                                   **PAGE:**

*Beck v. Ohio*, 379 U.S. 89, 91; 85 S.Ct. 223; 13 L.Ed.2d 142 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Bizzarri v. State*, 492 S.W.2d 944, 946 (Tex. Crim. App. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Blanks v. State*, 968 S.W.2d 414, 420, 421 (Tex. App.--Texarkana 1998, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23,24,30

*Butler v. State*, 990 S.W.2d 298, 302 (Tex. App.--Texarkana 1999, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Canada v. State*, 446 S.W.2d 601, 603-04 (Tex. App.--Texarkana 2014, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Carroll v. State*, 56 S.W.3d 644, 647, 650 (Tex. App.--Waco 2001, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,31

*Colvin v. State*, 467 S.W.3d 647 (Tex. App.--Texarkana 2015, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007) . . . 20

*Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Ehrhart v. State*, 9 S.W.3d 929, 930 (Tex. App.--Beaumont 2000, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**CASES:**                                                 **PAGE:**

*Flowers v. State*, 438 S.W.3d 86, 107 (Tex. App.--Texarkana
2014, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Garcia v. State*, 827 S.W.2d 937, 942 (Tex. Crim. App. 1992). . . 25

*Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App.
2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.--Texarkana
2010, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996) . . . . . 20

*Guzman v. State*, 955 S.W.2d 85, 89, 90 (Tex. Crim. App.
1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14,24,25,28

*Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.--Austin
1998, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Herrera v. State*, 241 S.W.3d 520, 525, 526 (Tex. Crim.
App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Martinez v. State*, 348 S.W.3d 919, 922-23 (Tex. Crim.
App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Martinez v. State*, 29 S.W.3d 609, 612 (Tex. App.--Houston
[1st Dist.] 2000, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . 17,18

*Miller v. State*, 418 S.W.3d 692, 696-97 (Tex. App.--Houston
[14th Dist.] 2013, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . 15

*Miranda v. Arizona*, 384 U.S. 436, 442-457, 467-79; 86 S. Ct.
1602; 16 L. Ed. 2d 694 (1966) . . . . . . . . . . . . . . . . . . . . . 22

*Potts v. State*, 571 S.W.2d 180, 182 (Tex. Crim. App. [Panel
Op.] 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

| CASES: | PAGE: |
|---|---|

*Renfro v. State*, 958 S.W.2d 880, 884 (Tex. App.--Texarkana
1997, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     30-31

*Rhodes v. State*, 84 S.W.3d 10, 14 (Tex. App.--Texarkana
2002, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25,27

*Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.--Texarkana
2009, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13-14

*Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App.
1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     15,20

*Sossamon v. State*, 816 S.W.2d 340, 345 (Tex. Crim.
App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     30

*State*, 958 S.W.2d 880, 884 (Tex. App.--Texarkana 1997, pet. ref'd).

*State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App.
1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14

*State v. Bassano*, 827 S.W.2d 557, 560 (Tex. App.--Corpus
Christi 1992, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11,13

*State v. Kerwick*, 393 S.W.3d 270, 275 (Tex. Crim. App. 2013). .     18,19

*State v. Ross*, 32 S.W.3d 853, 856-57 (Tex. Crim. App. 2000). . .     14

*State v. Saenz*, 411 S.W.3d 488, 490 (Tex. Crim. App. 2013). . . .     21

*Stone v. State*, 147 S.W.3d 657, 659 (Tex. App.--Amarillo 2004,
pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13

*Thompson v. Keohane*, 516 U.S. 99, 113-14; 116 S.Ct. 457; 133
L.Ed.2d 383 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21

**CASES:** **PAGE:**

*Tyler v. State*, 161 S.W.3d 745, 749 (Tex. App.--Fort Worth
    2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,17,18

*Tucker v. State*, 183 S.W.3d 501, 507 (Tex. App.--Fort Worth
    2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Vanderburg v. State*, 365 S.W.3d 712, 713-14 (Tex. App.--
    Texarkana 2012, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App.
    1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). . . . . . 32

**STATUTES:** **PAGE:**

TEX. CODE CRIM. PROC. ANN. ART. 1.15 (West 2005) . . . . 33

TEX. CODE CRIM. PROC. ART. 1.15 . . . . . . . . . . . . . . . . . . . 12

TEX. CODE CRIM. PROC. ART. 14.01(b) (West 2014) . . . . . . 24,27,28

TEX. CODE CRIM. PROC. ART. 38.21 . . . . . . . . . . . . . . . . . . 21,28

TEX. R. APP. P. 33.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TEX. R. APP. P. 38.1(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

TEX. R. APP. P. 38.2(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . ix

TEX. R. APP. P. 38.2(a)(1) (A) . . . . . . . . . . . . . . . . . . . . . . . . i

TEX. TRANSP. CODE ANN. §545.060 (West 2011) . . . . . . . . 12,16,18

TEX. TRANSP. CODE ANN. §545.060 (a)(1)-(2)
    (West 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**STATEMENT OF THE CASE**

This is a conspiracy case, and is a companion case to cause number 06-15-00024-CR styled *Rodney Boyett v. The State of Texas*.

Law enforcement officers in Lamar County were notified that Jessica Boyett had just purchased pseudoephedrine at CVS located at 507 Clarksville in downtown Paris. *See* RR, pgs. 9, 13. Law enforcement officers had also located a vehicle, a white pickup, that was registered to Rodney Boyett. *See* RR, pg. 14. After surveillance and an investigation, a traffic stop was initiated and a probable cause search of the vehicle (white pickup) revealed pseudoephedrine tablets and other chemicals. Jessica Boyett was arrested along with her husband (Rodney Boyett) and charged with possession of chemicals. *See* RR, pgs. 33-34.

Jessica Boyett filed a motion to suppress which, after a hearing, was denied by the trial court. *See* RR, pg. 170. Jessica Boyett then accepted a plea bargain agreement that assessed a $500.00 fine and sentenced her to five years confinement in the Texas Department of Criminal Justice Institutional Division; however, that was probated for a period of three years. *See* RR, pg. 179. Jessica Boyett timely filed his notice of appeal. *See* CR, pg. 188. The certification included that "the right to appeal the judge's ruling on the motion to suppress." *See* CR, pg. 183.

## STATEMENT REGARDING ORAL ARGUMENT

The State of Texas will waive oral argument. *See* Tex. R. App. P. 38.1(e), 38.2(a)(1).

## ISSUES PRESENTED IN REPLY

**ISSUE PRESENTED IN REPLY NO. 1:** THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE TRAFFIC STOP WAS SUFFICIENTLY SUPPORTED BY REASONABLE SUSPICION, AND WAS JUSTIFIED.

**ISSUE PRESENTED IN REPLY NO. 2:** THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE JESSICA BOYETT'S ARREST WAS SUPPORTED BY PROBABLE CAUSE; THE APPELLANT'S CONFESSION WAS VOLUNTARY; AND THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ADMITING THE RECORDED STATEMENT/CONFESSION.

**ISSUE PRESENTED IN REPLY NO. 3:** THE EVIDENCE WAS SUFFICIENT TO SUBSTANTIATE THE APPELLANT'S, JESSICA BOYETT'S, GUILT OF CRIMINAL CONSPIRACY UNDER ARTICLE 1.15 OF THE TEXAS CODE OF CRIMINAL PROCEDURE.

CAUSE NO. 06-15-00023-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA
_____

JESSICA BOYETT, Appellant

V.

THE STATE OF TEXAS, Appellee
_____

ON APPEAL FROM THE 6TH DISTRICT COURT;
LAMAR COUNTY, TEXAS; TRIAL COURT NO. 25505;
HONORABLE WILL BIARD, JUDGE
_____

# APPELLEE'S (STATE'S) BRIEF
_____

TO HONORABLE SIXTH COURT OF APPEALS:

COMES NOW, the State of Texas, by and through its Lamar County and District Attorney's Office, files this its Appellee's Brief under Rule 38.2 of the Texas Rules of Appellate Procedure.

Unless otherwise indicated, the appellant will be referred to as "Jessica Boyett" and the appellee will be referred to as "the State."

-1-

**Factual Background.**

In the fall of 2013, Lieutenant Anson Amis (Amis) with the sheriff's department had a program that monitored the purchase of pseudoephedrine. *See* RR, pg. 9. Through that system, he was allowed to "flag" (RR, pgs. 9, 13) people or certain individuals that he thought might have suspicious buying patterns of pseudoephedrine. *See* RR, pgs. 9, 13. Amis contacted Leigh Foreman (Foreman) with the Paris Police Department and stated that Jessica Boyett had just purchased pseudoephedrine at CVS located at 507 Clarksville in downtown Paris. *See* RR, pgs. 9, 13.

On September 24, 2013, Foreman then became involved in an investigation of Rodney and Jessica Boyett. *See* RR, pg. 9. Rodney and Jessica Boyett were married (RR, pg. 9), and they lived in Rattan, Oklahoma. *See* RR, pg. 14.

According to Amis, Jessica and Rodney Boyett had the same address on their drivers license, and were buying pills in the Paris area at different pharmacies in a close timeframe together. *See* RR, pg. 12. Foreman believed that they were being deceptive in their buying of pseudoephedrine, and that they were purchasing pills for the use of making methamphetamine.

-2-

*See* RR, pg. 12.

Amis called Foreman and asked if he could go to the CVS Pharmacy out by Wal-Mart, which was at 3710 Lamar Avenue. *See* RR, pgs. 13, 17. Foreman did. *See* RR, pg. 14. The purpose in going to a different pharmacy was to see if Rodney Boyett was going to buy. *See* RR, pg. 14. "We usually call them a pill run." *See* RR, pg. 15.

Amis had located a vehicle, a white pickup, that was registered to Rodney Boyett. *See* RR, pg. 14. The vehicle was in the parking lot, and had Oklahoma tags. *See* RR, pg. 16.

In unmarked vehicles, Foreman, Amis and Detective Tommy Moore began surveillance at 3710 Lamar Avenue. *See* RR, pg. 16. The pickup left, and the officers began following the vehicle. *See* RR, pg. 17. The vehicle went to Home Depot, where it stayed for "a short while." *See* RR, pg. 17. Foreman observed that both Rodney and Jessica Boyett entered the store, then left the store and got back into the vehicle. *See* RR, pgs. 18-19. They went back towards Wal-Mart. *See* RR, pg. 19.

The officers continued their surveillance and followed them as they traveled back to Wal-Mart. *See* RR, pg. 19. They were in Wal-Mart, again for a short time, before "exiting Wal-Mart, getting in their vehicle and

leaving." *See* RR, pg. 19. *See also* RR, pg. 21.

The officers followed them to see if they would make any other stops before leaving to go back towards Oklahoma. *See* RR, pg. 21. "They did not." *See* RR, pg. 21.

**<u>Observation of a Traffic violation.</u>**

In the 1100 block of the northeast Loop, Foreman observed a traffic violation; they failed to maintain a single lane. *See* RR, pg. 21. There was really heavy traffic on the Loop, so Foreman waited for them to exit on North Main (i.e. Highway 271), heading northbound. At that time, he initiated a traffic stop. *See* RR, pg. 22.

As Foreman approached on the driver's side, Rodney Boyett was in the driver's seat. *See* RR, pg. 23. Foreman identified himself, explained to Rodney Boyett why he had been stopped, and asked for identification. *See* RR, pg. 25. Foreman asked Rodney Boyett to exit the vehicle, so he could speak with him about his activity for the day. *See* RR, pg. 25. Foreman and Rodney Boyett went to the rear of the vehicle. *See* RR, pg. 29.

According to Rodney Boyett, he had been to the CVS, Wal-Mart and Home Depot. *See* RR, pg. 25. Rodney Boyett said that they had purchased pseudoephedrine at Wal-Mart. *See* RR, pg. 26. Rodney Boyett also said

that he had liquid heat in the vehicle. *See* RR, pgs. 26, 29. Finally, Rodney Boyett told Foreman that "they were good people." *See* RR, pg. 28. *See also* RR, pg. 29.

Detective Moore began speaking with Jessica Boyett. *See* RR, pg. 29. They were at the front of the vehicle on the passenger side. *See* RR, pg. 29. Later, Foreman asked her if they had any ingredients to make methamphetamine, and she said they did not. *See* RR, pg. 30.

Foreman went to the white pickup, and he searched the vehicle (RR, pgs. 30, 32) for ingredients used to manufacture methamphetamine. *See* RR, pgs. 30. Foreman believed that he had probable cause to believe that there was evidence of a crime in the vehicle. *See* RR, pg. 32. Rodney and Jessica Boyett were detained at that time. *See* RR, pg. 36. *See also* RR, pg. 64 ("they were still in detention.").

**Probable Cause Search and Arrest.**

During the search, Foreman found boxes of ephedrine and pseudoephedrine tablets. *See* RR, pgs. 33, 65. Also, Foreman found two bottles of liquid heat, rubber tubing and there bottles of hydrogen peroxide. *See* RR, pgs. 33, 64. Foreman took possession of those items and placed Rodney and Jessica Boyett under arrest for possession of certain chemicals.

*See* RR, pgs. 33-34, 37.

An "actual" police vehicle arrived, and they were placed in the back of that unit because suspects were not transported in unmarked vehicles. *See* RR, pg. 34. They were transported to the Paris Police Department and placed in the booking room. *See* RR, pgs. 37, 65.

**Interviews of Jessica Boyett.**

Jessica Boyett was booked-in first. *See* RR, pg. 37. Foreman asked Jessica Boyett if she wanted to speak with him, and she did. *See* RR, pg. 39. In the CID office (RR, pg. 38), Foreman and Detective Moore interviewed Jessica Boyett first. *See* RR, pg. 36. Foreman read her *Miranda* rights and warning during her two interviews that night. *See* RR, pgs. 38-40.

During the first interview, Jessica Boyett was deceptive about the intended use. *See* RR, pg. 40. "She lied." *See* RR, pg. 40. She did not ask to have a lawyer. *See* RR, pg. 45.

Prior to the second interview, Jessica Boyett indicated that she wanted to speak with us again, and that she wanted to tell the truth. *See* RR, pg. 43. Foreman escorted her back to the CID interview room and gave her the *Miranda* warning, once again. *See* RR, pg. 44.

During the second interview, Jessica Boyett did indicate that the

liquid heat was used to manufacture methamphetamine. *See* RR, pg. 44. Jessica Boyett said that she had used methamphetamine the previous day by shooting it up with a syringe, and that she (and Rodney) had both used methamphetamine the previous day, after he had gotten off work. *See* RR, pg. 44.

Also, Jessica Boyett talked about Rodney Boyett cooking methamphetamine. *See* RR, pg. 45. It was cooked on a shed on their property. *See* RR, pgs. 45, 50. During the interviews, Jessica Boyett said that "she didn't know how to cook, but she had been present while it was cooked, but that she [did] not know how to cook it." *See* RR, pg. 49. *See also* State's Exhibit 2.

**Interview of Rodney Boyett.**

Foreman and Detective Moore decided to interview Rodney Boyett on the following day. *See* RR, pg. 50. Foreman began his interview with Rodney Boyett at approximately 8:30 a.m. that morning. *See* RR, pg. 51. He was "*Mirandized*." *See* RR, pg. 51.

During the interview, Rodney Boyett talked about his methamphetamine use, since he was 14 years of age. *See* RR, pg. 51. He used it by injection, and he showed a needle mark on his left arm where he

had used methamphetamine.  *See* RR, pg. 51.

Eventually, Rodney Boyett said that they had a shed where he cooked it.  *See* RR, pg. 52.  He went in to specific detail about how his particular process of cooking methamphetamine, a "Red P."  *See* RR, pg. 52 ("red phosphorous").  *See also* State's Exhibit 1.

### Procedural Background.

On November 14, 2013, a grand jury in Lamar County returned an original indictment against Jessica Boyett in cause number 25505.[1]  *See* CR (25505), pg. 5.  By two (2) counts in this indictment, the State charged Jessica Boyett with the felony offenses of (1) conspiracy to manufacture a controlled substance, namely, methamphetamine of more than one gram but less than four grams and (2) possession or transportation of chemicals with intent to manufacture a controlled substance.  *See* CR, pg. 5.

### Pre-Trial Suppression Hearing on February 3, 2015.

Subsequently, Jessica Boyett filed her motion to suppress on or about April 22, 2014.  *See* CR, pgs. 73-75.  During a hearing on February 3rd, the trial court called cause number 25505 (and 25506),[2] after impaneling a jury

---

[1]  Similarly, the grand jury returned an original indictment against Rodney Boyett in cause number 25506.

[2]  The corresponding appellate cause number is 06-15-00024-CR.

the previous day. *See* RR, pg. 6. The trial court approved the agreement between counsel as to a motion in limine. *See* RR, pgs. 6-7. The trial court then proceeded with Jessica Boyett's motion to suppress. *See* RR, pg. 7.

The State stipulated that the search of the vehicle was without a warrant, and called its first witness (Foreman). *See* RR, pg. 8. During Foreman's testimony, the proceedings were interrupted, and the trial court invoked "the Rule" with the exception of the expert-witnesses. *See* RR, pgs. 10-11. Upon the conclusion of Foreman's testimony, the State rested for purposes of the motion to suppress. *See* RR, pg. 71.

The defense presented several witnesses, which included the testimony of Rodney Boyett (RR, pgs. 71-98) and Jessica Boyett. *See* RR, pgs. 98-114. Upon the conclusion of the testimony from the defense witnesses, the trial court ruled, "[b]ased on the totality of the evidence that the Court has heard and considered, the Court is going to deny the Motion to Suppress." *See* RR, pg. 170.

On February 3, 2015, the trial court signed its order denying the motion to suppress. *See* CR, pg. 170.

**Subsequent Proceedings.**

Subsequently, the State abandoned count 2 in the original indictment,

and the trial court accepted a plea bargain agreement. *See* RR, pg. 178. The trial court then found Jessica Boyett guilty and sentenced her to five (5) years in the Texas Department of Criminal Justice Institutional Division but placed her on community supervision for a period of three (3) years. *See* RR, pgs. 178-179. The trial court assessed a $500.00 fine. *See* RR, pg. 179.

In addition, the trial court approved the portion of the plea bargain agreement that allowed Jessica Boyett to appeal any pre-trial motions, including the motion to suppress. *See* RR, pg. 179. On February 3, 2015, the trial court signed its judgment of conviction by court--waiver of jury trial. *See* CR, pgs. 189-190.

On February 4, 2015, Jessica Boyett timely filed her notice of appeal. *See* CR, pg. 188. The trial court's certification specifically included that "Defendant shall have the right to appeal the judge's ruling on the motion to suppress and all pretrial motions." *See* CR, pg. 183.

**<u>Procedural Background: Appeal</u>.**

On or about February 10, 2015, Jessica Boyett, as the appellant, filed her notice of appeal in this Court. On March 2nd, appellate counsel filed a notice of appearance for Jessica Boyett. *See* CR, pgs. 191-192.

By electronic filing or about March 31st, the District Clerk of Lamar

County filed the Clerk's Record. The official court reporter filed the Reporter's Record on or about July 7th along with the exhibits on or about July 13, 2015.

The appellant (Jessica Boyett) filed a motion to extend time to file her brief, which this Court granted on or about July 27, 2015. The appellant filed a second motion to extend time to file her brief, which this Court again granted on or about September 9, 2015. The appellant then filed her brief on October 5, 2015.

On or about November 4th, the State filed a motion to extend time to file its brief, which this Court granted until December 4, 2015. The State filed, or will be, filing its brief on or before December 4th.

## SUMMARY OF THE ARGUMENT

As a passenger in the vehicle, Jessica Boyett had standing to challenge the search of the vehicle registered to her husband (Rodney Boyett) because of community property laws. *See State v. Bassano*, 827 S.W.2d 557, 560 (Tex. App.--Corpus Christi 1992, pet. ref'd).

In summary, the trial court did not err in denying the appellant's, Jessica Boyett's, motion to suppress for the same reasons as in the State's Brief in cause number 06-15-00024-CR (now set for submission on the

briefs on December 3, 2015). Those reasons are the following:

(1) The traffic stop was sufficiently supported by reasonable suspicion on the basis of (a) section 545.060 of the Texas Transportation Code and (b) the officers' investigation of the pharmacy logs of purchases of pseudoephedrine in Lamar County.

(2) The appellant's arrest without a warrant was sufficiently supported by probable cause; and after Jessica Boyett's lawful arrest, her recorded statement/confession was voluntary.

(3) Finally, the evidence was sufficient to substantiate the appellant's guilt of criminal conspiracy under article 1.15 of the Texas Code of Criminal Procedure. Thus, the final judgment of conviction should be affirmed.

## ARGUMENT AND AUTHORITIES

**ISSUE PRESENTED IN REPLY NO. 1: THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE TRAFFIC STOP WAS SUFFICIENTLY SUPPORTED BY REASONABLE SUSPICION, AND WAS JUSTIFIED.**

A. **The Appellant's (Jessica Boyett's) Issue of Standing.**

A passenger generally has no standing to contest the search of a vehicle. *See*, *e.g.*, *Tucker v. State*, 183 S.W.3d 501, 507 (Tex. App.--Fort

Worth 2005, no pet.); *Stone v. State*, 147 S.W.3d 657, 659 (Tex. App.--Amarillo 2004, pet. ref'd); *Carroll v. State*, 56 S.W.3d 644, 650 (Tex. App.--Waco 2001, pet. ref'd). In her brief, Jessica Boyett did not address the issue of standing, but neither party raised the issue of standing in the trial court below. *See* Tex. R. App. P. 33.1(a).

After the traffic stop, Foreman approached the vehicle on the driver's side and Rodney Boyett was in the driver's seat. *See* RR, pg. 23. When Detective Moore began speaking with Jessica Boyett, they were at the front of the vehicle on the passenger side. *See* RR, pg. 29. So, Jessica Boyett was a passenger in the vehicle at the time of the stop. Also, Rodney Boyett and Jessica Boyett were married at the time of the stop. *See* RR, pg. 9.

As a passenger in the vehicle, Jessica Boyett had standing to challenge the search of the vehicle registered to her husband (Rodney Boyett) because of community property laws. *See State v. Bassano*, 827 S.W.2d 557, 560 (Tex. App.--Corpus Christi 1992, pet. ref'd).

B.    **Standard of Review:  Motion to Suppress.**

This Court reviews a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *See Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.--Texarkana 2010, pet. ref'd).; *Rogers v.*

*State*, 291 S.W.3d 148, 151 (Tex. App.--Texarkana 2009, pet. ref'd). Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, this Court affords almost total deference to its determination of facts supported by the record. *See State v. Ross*, 32 S.W.3d 853, 856-57 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). This Court affords the same deference to a trial court's rulings on mixed questions of law and fact if the resolution of those questions turns on an evaluation of credibility and demeanor. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). This Court reviews *de novo* the trial court's application of the law and determination of questions not turning on credibility. *See Carmouche*, 10 S.W.3d at 327; *Guzman*, 955 S.W.2d at 89. Since all the evidence is viewed in the light most favorable to the trial court's ruling, this Court is obligated to uphold the denial of the appellant's motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *See Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

The trial court's evidentiary ruling "will be upheld on appeal if it is

correct on any theory of law that finds support in the record." *See Flowers v. State*, 438 S.W.3d 86, 107 (Tex. App.--Texarkana 2014, pet. ref'd) (citing *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

### C. **Section 545.060 of the Texas Transportation Code.**

Section 545.060 of the Texas Transportation Code stated in pertinent part that "an operator on a roadway divided into two or more clearly marked lanes for traffic:  (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely."  *See* Tex. Transp. Code Ann. § 545.060(a)(1)-(2) (West 2011).  This statute is violated only when the vehicle's movement is unsafe.[3]  *See Miller v. State*, 418 S.W.3d 692, 696-97 (Tex. App.--Houston [14th Dist.] 2013, pet. ref'd); *Ehrhart v. State*, 9 S.W.3d 929, 930 (Tex. App.--Beaumont 2000, no pet.); *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.--Austin 1998, pet. ref'd).

### D. **Application of Law to the Facts in the Present Case.**

#### 1. **The Evidence Supported the Trial Court's Finding of Fact and Conclusion of Law that the Vehicle's Movement Was Unsafe.**

---

[3] *See* RR, pg. 141 ("The holding here and the argument that I want to make to the Court is that the language in this statute is that there has to be testimony that there was an unsafe failure to stay in a lane.").  *See also* RR, pg. 146 ("there was no testimony that it was unsafe.").

-15-

In the present case, Foreman testified during the suppression hearing to the following:

> Q.    So what happened next?
>
> A.    We followed them to see if they would make any other stops before leaving to go back towards Oklahoma. They did not. In about the 1100 block of the northeast loop I observed a traffic violation where they failed to maintain a single lane, which is described as vehicles left side tires -- they were in the right lane, and the vehicles left side tires crossed over the center line into the left lane before going back.
>
> Q.    Okay. Is that a traffic violation under the Safety Code In the State of Texas?
>
> A.    Under the Transportation Code.
>
> Q.    I'm sorry. Transportation Code?
>
> A.    Yes.

*See* RR, pgs. 21-22.

Although Rodney Boyett contended in his brief that "Foreman's description of what he saw was insufficient to fully describe a violation of § 545.060[,]"[4] the evidence could have supported the trial court's finding that the vehicle movement was unsafe. *See Tyler v. State*, 161 S.W.3d 745, 749 (Tex. App.--Fort Worth 2005, no pet.) (holding that the evidence supports the trial court's implicit finding that appellant's act of moving out

---

[4] *See generally* Appellant's Brief, pg. 30. *See also* RR, pgs. 141, 146.

-16-

of his lane of traffic, "straddling" the white line separating the traveling lane from the shoulder, and "erratically" re-entering his lane of traffic at an angle was unsafe and therefore a violation of section 545.060). In *Tyler*, the court of appeals held that the officer "could have stopped appellant because he saw him fail to maintain a single lane of traffic." *See id* (citing *Martinez v. State*, 29 S.W.3d 609, 612 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd) (holding that it was not unreasonable for the officer to conclude appellant's swerve onto the shoulder of a busy highway in the early hours of the morning was unsafe).

Similarly, here, the evidence could have supported the trial court's finding and conclusion of law (CR, pgs. 196, 199) that the vehicle movement was unsafe because Foreman testified that "there was really heavy traffic" still on the Loop. *See* RR, pg. 22. Also, Foreman testified that he "waited for them to exit on North Main headed northbound at which time I initiated a traffic stop." *See* RR, pg. 22. That testimony was sufficient for the trial court to make finding of fact number 9. *See* CR, pg. 196. Further, Foreman's testimony was sufficient to support the trial court's third conclusion of law that "Mr. Boyett moved from his lane when such movement could not have been made safely." *See* CR, pg. 199.

As in *Martinez*, it was not unreasonable for Foreman to conclude that the vehicle's left side tires crossing over the center line was unsafe. *See Martinez*, 29 S.W.3d at 612. In conclusion, Foreman could have stopped the appellant, Rodney Boyett, because he saw him fail to maintain a single lane of traffic. *See Tyler*, 161 S.W.3d at 749; Tex. Transp. Code Ann. § 545.060(a) (West 2011). The stop was justified, and that the trial court properly denied the appellant's motion to suppress. *See Martinez*, 29 S.W.3d at 612.

2. **The Trial Court Could Have Found Additional Reasonable Suspicion.**

In her brief, Jessica Boyett claimed that the information about pseudoephedrine purchases did not amount to reasonable suspicion, but a court may find reasonable suspicion even though "each fact in isolation may be insufficient." *See State v. Kerwick*, 393 S.W.3d 270, 275 (Tex. Crim. App. 2013). In the present case, the trial court heard Foreman's testimony that in the fall of 2013, Lieutenant Anson Amis with the sheriff's department had a program that monitored the purchase of pseudoephedrine. *See* RR, pg. 9. Through that system, he was allowed to "flag" (RR, pgs. 9, 13) people or certain individuals that he thought might have suspicious buying patterns. *See* RR, pgs. 9, 13. Through that system and the investigation of pharmacy

logs, law enforcement in Lamar County has lawfully obtained search warrants of residences. *See Canada v. State*, 446 S.W.2d 601, 603-04 (Tex. App.--Texarkana 2014, no pet.); *Vanderburg v. State*, 365 S.W.3d 712, 713-14 (Tex. App.--Texarkana 2012, no pet.).

When Amis contacted Foreman and stated that Jessica Boyett had just purchased pseudoephedrine at CVS located at 507 Clarksville in downtown Paris (RR, pgs. 9, 13), Foreman testified that he believed Jessica Boyett and Rodney Boyett were being deceptive in their buying of pseudoephedrine, and that they were purchasing pseudoephedrine for the use of making methamphetamine. *See* RR, pg. 12. When Foreman observed the Boyett's vehicle make stops at pharmacies, he had developed reasonable suspicion of a "pill run." *See* RR, pg. 15 ("We usually call them a pill run.").

While the fact of the pseudoephedrine purchase at CVS located at 507 Clarksville in downtown Paris (RR, pgs. 9, 13), in isolation, may have been insufficient, the trial court could have still found reasonable suspicion because the officers observed stops at other pharmacies. *See Kerwick*, 393 S.W.3d at 275. Foreman articulated specific facts that supported a "pill run." *See id*; RR, pg. 15.

Because the trial court could have found reasonable suspicion on that

additional basis, Jessica Boyett's argument in her brief should be rejected.

Accordingly, the appellant's first issue/point of error should be overruled.

**ISSUE PRESENTED IN REPLY NO. 2: THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE JESSICA BOYETT'S ARREST WAS SUPPORTED BY PROBABLE CAUSE; THE APPELLANT'S CONFESSION WAS VOLUNTARY; AND THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ADMITING THE RECORDED STATEMENT/CONFESSION.**

A. **Standard of Review.**

"[T]he trial court is the 'sole and exclusive trier of fact and judge of the credibility of the witnesses' and the evidence presented at a hearing on a motion to suppress, particularly where the motion is based on the voluntariness of a confession." *See Colvin v. State*, 467 S.W.3d 647 (Tex. App.--Texarkana 2015, pet. ref'd) (citing *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007) (citations omitted); *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Bizzarri v. State*, 492 S.W.2d 944, 946 (Tex. Crim. App. 1973)). Thus, in reviewing the trial court's factual determination of the circumstances surrounding the interrogation, this Court gives almost total deference to the trial court. *See Martinez v. State*, 348 S.W.3d 919, 922-23 (Tex. Crim. App. 2011). However, because the question of whether a

reasonable person would feel that he was not free to terminate the questioning and leave is a mixed question of law and fact that does not depend on the trial court's credibility determination, this Court employs a *de novo* standard when evaluating this question. *See Thompson v. Keohane*, 516 U.S. 99, 113-14; 116 S.Ct. 457; 133 L.Ed.2d 383 (1995); *State v. Saenz*, 411 S.W.3d 488, 490 (Tex. Crim. App. 2013).

B.     **This Court Should Give Almost Total Deference to the Trial Court, Which Did Not Abuse its Discretion in Admitting the Recorded Statement/Confession in State's Exhibit 2.**

With his second issue/point of error, Jessica Boyett alleged that the trial court erred when it denied the appellant's motion to suppress her recorded statement because (1) it was given in response to custodial interrogation by the police; (2) it was obtained as a result of his illegal arrest; and (3) it was not shown to be freely and voluntarily made without compulsion or persuasion as required by article 38.21 of the Texas Code of Criminal Procedure.

1.     **The Appellant Had the Initial Burden of Proving that His Statement Was the Product of "Custodial Interrogation".**

The United States Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of

action in any significant way." *See Miranda v. Arizona*, 384 U.S. 436, 442-457, 467-79; 86 S. Ct. 1602; 16 L. Ed. 2d 694 (1966); *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). At trial, the defendant bears the initial burden of proving that a statement was the product of "custodial interrogation." *See Herrera*, 241 S.W.3d at 526.

> The mere filing of a motion to suppress does not thrust a burden on the State to show compliance with *Miranda* . . . warnings *unless and until* the defendant proves that the statements he wishes to exclude were the product of custodial interrogation. Thus, the State has no burden at all unless '*the record as a whole clearly establishe[s]*' that the defendant's statement was the product of custodial interrogation by an agent for law enforcement. It is the defendant's initial burden to establish those facts on the record.

*See id* (italics added in the opinion).

In the present case, Jessica Boyett had the initial burden of proving that her statement was the product of "custodial interrogation" at trial. *See id*. Assuming that Jessica Boyett met her initial burden, the trial court did not abuse its discretion in admitting the statement during the suppression hearing. *See Blanks v. State*, 968 S.W.2d 414, 420 (Tex. App.--Texarkana 1998, pet. ref'd). In *Blanks*, an aggravated robbery case, this Court reasoned that:

> We agree with [the appellant] Blanks that, at the time he made oral statements which implicated himself, the inquiry turned

-22-

into a custodial interrogation. This is because at that point and time there was probable cause to arrest Blanks, and he was certainly a focus of the investigation. However, [officer] Simmons testified, and the trial court found, that Blanks was immediately given the statutory warnings before any other statements were made. The inculpatory statements contained in the "Statement of a Person in Custody" were taken after Blanks had received the appropriate warnings and waived his rights. Although Blanks was in custody, he was properly warned before giving the statement which was admitted at trial. The trial court did not abuse its discretion in admitting the statement.

*See id.*

As in *Blanks*, at the time Jessica Boyett made the oral statements which implicated herself, Foreman's inquiry had turned into a custodial interrogation. *See id.* As in *Blanks*, this is because there was probable cause to arrest Jessica Boyett at that point and time. *See id.* However, Foreman testified that Jessica Boyett was given the statutory warnings before any other statement was made. *See id.* *See also* RR, pgs. 38, 40. Jessica Boyett indicated that she understood her rights. *See* RR, pg. 39.

As in *Blanks*, the inculpatory statements contained in the recorded statement were taken after Jessica Boyett had received the appropriate warnings and waived her rights. *See Blanks*, 968 S.W.2d at 420. Although Jessica Boyett was in custody, she was properly warned before giving the statement. *See id.* That statement was properly admitted during the

suppression hearing.  *See* RR, pg. 57.  *See also* State's Exhibit 2.

As in *Blanks*, the trial court did not abuse its discretion in admitting the statement in State's Exhibit 2.  *See Blanks*, 968 S.W.2d at 420.  This Court should hold accordingly as to Jessica Boyett (and Rodney Boyett).

2. **The Appellant's Arrest Was Supported by Probable Cause, And Not Illegal.**

a. **Applicable Law:  Probable Cause.**

With the second sub-part of his second issue/point of error, Jessica Boyett contended in her brief that his recorded statement/confession was obtained, and was tainted, by his illegal/unlawful arrest because "there was a lack of probable cause to support the warrantless arrest."  But, article 14.01 of the Texas Code of Criminal Procedure provided that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."  *See* Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2014); *Guzman v. State*, 955 S.W.2d 85, 90 (Tex. Crim. App. 1997).

In *Guzman*, the Texas Court of Criminal Appeals held that the test for probable cause for a warrantless arrest is:

> "Whether at that moment the facts and circumstances within the officer's knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing the arrested person had committed or was committing an offense."

*See Guzman*, 955 S.W.2d at 90. *See also Beck v. Ohio*, 379 U.S. 89, 91; 85 S.Ct. 223; 13 L.Ed.2d 142 (1964) ("whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.").

In determining whether probable cause existed, this Court's evaluation of the facts surrounding the event is completely objective. *See Rhodes v. State*, 84 S.W.3d 10, 14 (Tex. App.--Texarkana 2002, no pet.) (citing *Garcia v. State*, 827 S.W.2d 937, 942 (Tex. Crim. App. 1992)). When several officers are involved in investigating a crime, the sum of information known to cooperating officers at the time of arrest is to be considered in determining whether probable cause to arrest existed. *See Butler v. State*, 990 S.W.2d 298, 302 (Tex. App.--Texarkana 1999, no pet.).

b.    **Sufficient Probable Cause Existed in the Present Case.**

In applying the law to the present case, several officers (Foreman, Amis, Moore) in Lamar County were involved in investigating a crime that began when Amis contacted Foreman and stated that Jessica Boyett had just purchased pseudoephedrine at CVS located at 507 Clarksville in downtown Paris. *See* RR, pgs. 9, 13. Amis had located a vehicle, a white pickup, that

was registered to Rodney Boyett. *See* RR, pg. 14. The officers began surveillance in unmarked vehicles at 3710 Lamar. *See* RR, pg. 16. When the white pickup left, the officers began following the vehicle. *See* RR, pg. 17. The vehicle went to Home Depot, where it stayed for "a short while." *See* RR, pg. 17. When the vehicle went back towards Wal-Mart (RR, pg. 19), the officers continued their surveillance and followed them as they traveled back to Wal-Mart. *See* RR, pg. 19. They were in Wal-Mart, again for a short time, before "exiting Wal-Mart, getting in their vehicle and leaving." *See* RR, pg. 19. *See also* RR, pg. 21.

The officers followed them to see if they would make any other stops before leaving to go back towards Oklahoma. *See* RR, pg. 21. "They did not." *See* RR, pg. 21. When they did not, Foreman, who already had sufficient reasonable suspicion for a "pill run" (RR, pg. 15), initiated a lawful traffic stop on Highway 271, which was the highway that leads back to Oklahoma. *See* RR, pg. 22.

During the traffic stop, Foreman and Rodney Boyett conversed at the rear of the vehicle (RR, pg. 29). According to Foreman, this conversation was "approximately five, no longer than ten" minutes, a reasonable time. *See* RR, pg. 31. During their conversation, Rodney Boyett said that they had

purchased pseudoephedrine at Wal-Mart. *See* RR, pg. 26. Rodney Boyett also said that he had liquid heat in the vehicle. *See* RR, pgs. 26, 29.

With that information, Foreman had sufficient probable cause to search the vehicle. *See* RR, pgs. 30, 32. According to Foreman's testimony, he believed that he had probable cause to believe that there was evidence of a crime in the vehicle. *See* RR, pg. 32.

The probable cause search revealed two boxes of ephedrine, pseudoephedrine tablets that were consistent with the purchases that Amis had "flagged." *See* RR, pg. 33. The search also revealed two bottles of liquid heat, rubber tubing and three bottles of hydrogen peroxide. *See* RR, pg. 33. Foreman then took possession of these items and placed Rodney Boyett under arrest for possession of certain chemicals. *See* RR, pgs. 33-34.

When the facts surrounding the investigation and traffic stop of September 24, 2013 were viewed objectively, *see Rhodes*, 84 S.W.3d at 14, sufficient probable cause existed for Foreman to place Jessica Boyett under arrest without a warrant. *See generally* Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2014). Foreman's surveillance of the vehicle, which included stops at other pharmacies (other than the CVS at 507 Clarksville), provided Foreman with sufficient probable cause to believe that

pseudoephedrine had been purchased and was within the vehicle at the time of the lawful traffic stop. Foreman's probable cause search of the vehicle, which included pseudoephedrine tablets from pharmacies that Amis had "flagged," established that Jessica Boyett had committed an offense in Foreman's presence or within his view on September 24, 2013 in Paris, Lamar County, Texas. Therefore, Foreman was authorized to arrest Jessica Boyett without a warrant. *See* Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2014); *Guzman*, 955 S.W.2d at 90.

That arrest without a warrant was lawful, and supported by sufficient probable cause. Therefore, the appellant's second issue/point of error should be overruled.

### 3. **The Statement/Confession Was Voluntarily Given.**

With the third and final sub-part of his second issue/point of error, Jessica Boyett contended that the trial court erred when it denied his motion to suppress because it was not shown to be freely and voluntarily made without compulsion or persuasion as required by Article 38.21 of the Texas Code of Criminal Procedure. In this regard, Jessica Boyett alleged that (1) she was expressly denied access to counsel; and (2) was threatened with loss of her children unless she told the officer what the officer wanted to hear.

*See* Appellant's Brief, pg. 45.

    (a)    **Allegedly Denied Access to Counsel.**

In the present case, Foreman testified that Jessica Boyett did not ask to have a lawyer. *See* RR, pg. 45. More specifically, Foreman testified to question and answer, as follows:

> Q.    Okay. Now, I want to ask you, at times during the first interview, did Ms. Boyett ever use the word lawyer?
>
> A.    She did.
>
> Q.    Did she ask to have a lawyer?
>
> A.    She did not.
>
> Q.    What did she ask you when she used the word lawyer?
>
> A.    She asked me if -- if I would still talk to her if we waited for her to get an attorney and talk to her at a later date.
>
> Q.    What did you tell her?
>
> A.    I told her I would not.
>
> Q.    Did you tell her why?
>
> A.    I did.
>
> Q.    What did you tell her?
>
> A.    That her -- at that time, which it would be lengthy time -- I knew this. I don't think she knew it. But there's a time discrepancy, so it would make her information stale. So

the information we gather at the time that we're involved in this investigation, the manufacturing of methamphetamine, we need it to be relative in a timely manner to see how far it goes, where it goes, who all is involved. So if we waited a month, three months, six months, her information would obviously be stale.

Q.     Did she at that point say, well, I want a lawyer?

A.     No.

*See* RR, pgs. 45-46.

As the "sole and exclusive trier of fact and judge of the credibility of the witnesses," the trial court was in the best position to judge Foreman's credibility. In the present case, Jessica Boyett did not ask for a lawyer when she was given her statutory and *Miranda* warnings by Foreman. *See* State's Exhibit 2, beginning at 00:48. Accordingly, the evidence supported the trial court's thirty-first (31) finding of fact. *See* CR, pg. 202.

(b)     **Allegedly Threatened With the Loss of Children.**

In order for a confession to be rendered involuntary by promises by law enforcement, the appellant must show that the promise (1) was positive; (2) of some benefit to the defendant; (3) made or sanctioned by someone in authority; and (4) of such an influential nature that a defendant would speak untruthfully in response thereto. *See Blanks*, 968 S.W.2d at 421 (citing *Sossamon v. State*, 816 S.W.2d 340, 345 (Tex. Crim. App. 1991)); *Renfro v.*

*State*, 958 S.W.2d 880, 884 (Tex. App.--Texarkana 1997, pet. ref'd).

Here, Jessica Boyett alleged that she "was threatened with the loss of her children unless she told the officer what the officer wanted to hear, at which time this would all just go away." *See* Appellant's Brief, pg. 45. Jessica Boyett testified to the following:

> Q. Okay. Wait a minute. Step-kids. How did he know you had children?
>
> A. Because I said that in the booking area that I -- the kids were at home.
>
> Q. Okay. So what else -- what other conversations was had? Well, where did you go from there?
>
> A. And from there, he said, all right. He said, well, you're going to tell us what we want to know. And if you do this, then you can go home, and this will all just go away. If you tell us what we want to know, what we want to hear, then we can talk to the DA, and it will all just work itself out. There won't be no jail time and you get to go home.

*See* RR, pgs. 107-108. Foreman also testified to the following:

> Q. Did you talk to her about your concern for her children?
>
> A. I did.

*See* RR, pg. 50.

Again, the trial court was the "sole and exclusive trier of fact and judge of the credibility of the witnesses." *See Colvin*, 467 S.W.3d at 647.

-31-

As such, the trial court was in the best position to judge the credibility of the witnesses, and the trial court could have believed Foreman's testimony, in whole or in part, over that of Jessica Boyett. Accordingly, the evidence supported the trial court's court thirtieth (30) finding of fact. *See* CR, pg. 202.

More specifically, the trial court could have resolved that there was no threat to Jessica Boyett's children, and that implicit/implied finding was supported by the record. Viewing the evidence in the light most favorable to the trial court's ruling, the trial court made the implicit/implied finding that there was no threat to Jessica Boyett's children, and that implicit/implied finding was supported by the record. *See Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (a reviewing court must "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.").

In the end, the trial court resolved that the statement/confession was given voluntarily, and the trial court's fifteenth (15) conclusion of law was supported by the record. *See* CR, pg. 205 ("The Defendants' statements were voluntarily given and not the product of coercion."). In conclusion, the

appellant's second issue/point of error should be overruled.

**ISSUE PRESENTED IN REPLY NO. 3:** **THE EVIDENCE WAS SUFFICIENT TO SUBSTANTIATE THE APPELLANT'S, JESSICA BOYETT'S, GUILT OF CRIMINAL CONSPIRACY UNDER ARTICLE 1.15 OF THE TEXAS CODE OF CRIMINAL PROCEDURE.**

A. **Standard of Review: Article 1.15 of the Texas Code of Criminal Procedure.**

It is well settled that a judicial confession, standing alone, is sufficient to sustain a conviction upon a guilty plea, and to satisfy the requirements of article 1.15 of the Texas Code of Criminal Procedure. *See Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g); *Potts v. State*, 571 S.W.2d 180, 182 (Tex. Crim. App. [Panel Op.] 1978). *See also* Tex. Code Crim. Proc. Ann. art. 1.15 (West 2005).

B. **Application of Law to the Confession in the Present Case.**

Among the written plea admonishments (CR, pgs. 171-182), Jessica Boyett signed a judicial confession, which reflected in pertinent part the following:

> Upon my oath I swear my true name is JESSICA BOYETT and I request the papers in this cause reflect my true name. I am 27 years of age. I have read (or have had read to me) the indictment or information filed in this case and same has been reviewed with me by my attorney and I understand all matters contained therein; and **I committed and am guilty of each and every act as alleged therein**, except those acts

-33-

expressly waived by the State.[5]  All of the facts alleged in the indictment or information are true and correct.  I am guilty of the offense(s) charged as well as all lesser included offenses.

\* \* \*

*See* CR, pg. 181 (bold type added for emphasis).

At the plea hearing, the following exchange then occurred in open court:

THE COURT:  In the written plea admonishment, each of you executed what's called a judicial confession.  This is the evidence the State of Texas will introduce in each case in order to prove your guilt.  By executing that document, each of you are giving up and waiving your right against self-incrimination.  Do you understand?

MS. BOYETT:  Yes.

MR. BOYETT:  Yes.

THE COURT:  Okay.  Mr. Haslam, have you explained these documents to your clients?

MR. HASLAM:  I have.

THE COURT:  In your opinion do you believe each of them understand their admonishments, their rights, and consequences of their pleas?

MR. HASLAM:  I do.

---

[5] The State abandoned Count 2 (RR, pgs. 173, 176) in the indictment, which charged in pertinent part that Jessica Boyett "in Lamar County, Texas on or about September 24, 2013, did then and there, with intent to unlawfully manufacture a controlled substance, namely, Methamphetamine, possess or transport a chemical precursor, to-wit: pseudoephedrine, Against the peace and dignity of the State."  *See* CR, pg. 5.

THE COURT: It's the Court's understanding in -- and the plea agreement is identical, isn't it?

MS. POLLARD: Yes, Your Honor.

THE COURT: It's the Court's understanding in exchange for your plea of guilty, Mr. and Ms. Boyett, as to Count One the State is going to abandon Count Two in each case. The State's recommendation for punishment is five years confinement in the Texas Department of Criminal Justice Institutional Division; however, that will be probated for a period of three years and a $500 fine. In addition, the State and -- the State's and your attorney -- part of the plea agreemetn is that you have the right to appeal any pre-trial matters in each of the cases, including the Motion to Suppress that was heard this morning that the Court denied. Is that your understanding as well?

MS. BOYETT: Yes.

MR. BOYETT: Yes.

THE COURT: Is that your understanding, Mr. Haslam?

MR. HASLAM: Yes, Your Honor.

THE COURT: Does either side have any reason to believe the Defendants are incompetent?

MS. POLLARD: No, Your Honor.

MR. HASLAM: No.

THE COURT: Okay. Ms. Boyett, to the allegations contained in the indictment, how do you plead -- as to the allegations contained in the indictment as to Count One, how do you plead, guilty or not guilty?

-35-

MS. BOYETT:  Guilty.

*   *   *

*See* RR, pgs. 175-177.

In addition to the open plea of guilty, the trial court admitted into evidence "the plea papers," which included the admonishments and judicial confession (marked as State's Exhibit No. 1).  *See* RR, pg. 178.  The "plea papers" were also filed with the District Clerk of Lamar County and made a part of the Clerk's record in this appellate proceeding.  *See* CR, pgs. 171-182.  Because the written judicial confession, as evidence, was sufficient to substantiate Jessica Boyett's guilt of criminal conspiracy, the appellant's third issue/point of error should be overruled.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the State of Texas prays that upon final submission of the above-styled and numbered cause without oral argument, this Court affirm the trial court's final judgment of conviction in all respects; adjudge court costs against the appellant; and for such other and further relief, both at law and in equity, to which it may be justly and legally entitled.

Respectfully submitted,

Gary D. Young
Lamar County & District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

By:_____
     Gary D. Young, County Attorney
     SBN# 00785298
     gyoung@co.lamar.tx.us

**ATTORNEYS FOR THE STATE OF TEXAS**

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the "Appellee's (State's) Brief" was a computer-generated document and contained 9123 words--not including the Appendix, if any.  The undersigned attorney certified that he relied on the word count of the computer program, which was used to prepare this document.

_____
GARY D. YOUNG
gyoung@co.lamar.tx.us

## CERTIFICATE OF SERVICE

This is to certify that in accordance with Tex. R. App. P. 9.5, a true copy of the Appellee's (State's) Brief has been served on the 4th day of December, 2015 upon the following:

Kristin Brown
The Law Office of Kristin R. Brown, PLLC
18208 Preston Road, Suite D9375
Dallas, TX   75252

_____
GARY D. YOUNG
gyoung@co.lamar.tx.us